DA 13-0057

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 281

STATE OF MONTANA,

        Plaintiff and Appellant,

   v.

THOMAS LENARD MADSEN,

        Defendant and Appellee .


APPEAL FROM:    District Court of the Eighteenth Judicial District,
                    In and For the County of Gallatin, Cause No. DC 12-0168A
                    Honorable Holly Brown, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

                Timothy C. Fox, Montana Attorney General; Barbara C. Harris, Assistant
                Attorney General, Helena, Montana

        For Appellee:

                Al Avignone; Lisa A. Banick; Avignone, Banick & Williams, PLLC,
                Bozeman, Montana

        For Amicus:

                Anna Conley, ACLU of Montana, Missoula, Montana


                              Submitted on Briefs:  August 21, 2013
                                    Decided:  September 26, 2013

Filed:

                                   Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     The State of Montana appeals the District Court's "Order on Defendant's Motion to Dismiss," filed January 11, 2013.  We reverse.

¶2     The issue on appeal is whether the District Court erred in dismissing a charge against Madsen under § 45-5-204, MCA.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     In 2011 Thomas Madsen was a Gallatin County Sheriff's Deputy.  On February 9, 2011, K.J. was a female juvenile whose parents brought her to the Gallatin County Law & Justice Center and requested law enforcement assistance in getting her transported to residential treatment.  At the time of the incident involved in this case, officers detained K.J. in a small interview room, with her hands cuffed to a waist belt and shackles on her legs.  When she attempted to turn off the light and lie on the floor, Madsen, who was outside the room, ordered her to sit at the table with the lights on and warned that if she did not do so she would "find [herself] in a whole world of hurt."

¶4     When K.J. did not comply with Madsen's orders he entered the room, grabbed her by the neck, and pushed her against the wall, banging her head.  Another officer entered the room and separated Madsen from K.J.  In his brief on appeal Madsen refers to the incident as a "physical control maneuver."

¶5     On September 4, 2012, the State charged Madsen with mistreating prisoners, a felony offense, pursuant to § 45-5-204, MCA.  Madsen subsequently moved to dismiss the charge, contending that K.J. was not a "prisoner" under that statute.  The District

2

Court agreed, holding that a "prisoner" under § 45-5-204, MCA, means only "an individual who is serving a sentence at the State prison or another State facility as the result of a conviction." The District Court dismissed the charge against Madsen because K.J. was a juvenile, she had not been convicted of an offense, and she was not being held in a State facility. The State appeals.

## STANDARD OF REVIEW

¶6 This Court reviews de novo, for correctness, a district court's decision on a motion to dismiss a criminal case, and its decision on the interpretation and construction of a statute. *State v. Dugan*, 2013 MT 38, ¶ 13, 369 Mont. 39, 303 P.3d 755 (dismissal of a criminal case); *State v. Brown*, 2009 MT 452, ¶ 6, 354 Mont. 329, 223 P.3d 874 (construction of a statute).

## DISCUSSION

¶7 The issue on appeal is whether the District Court correctly construed the term "prisoner" as used in § 45-5-204, MCA. That statute provides:

Mistreating prisoners. (1) A person commits the offense of mistreating prisoners if, being responsible for the care or custody of a prisoner, the person purposely or knowingly:
(a) assaults or otherwise injures a prisoner;
(b) intimidates, threatens, endangers, or withholds reasonable necessities from the prisoner with the purpose to obtain a confession from the prisoner or for any other purpose; or
(c) violates any civil right of a prisoner.

Section 45-5-204(1), MCA. The District Court concluded that the word "prisoner" in the statute is ambiguous. The District Court determined that the Legislature could have used

another word besides "prisoner" and had done so in other statutes. The District Court analyzed the amendment history of the various statutes incorporated into the present § 45-5-204(1), MCA, and determined that the Legislature meant something narrow and restrictive by using the word "prisoner." The District Court concluded that "prisoner" meant only a person who is serving a sentence at the State prison or another State facility as the result of a conviction.

¶8    As noted, this Court reviews an issue of statutory interpretation as a question of law to determine whether the District Court's interpretation was correct. *Langemo v. Mont. Rail Link*, 2001 MT 273, ¶ 18, 307 Mont. 293, 38 P.3d 782. A judge's role in statutory interpretation is to "ascertain and declare what is in terms or substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. A court's function is to determine legislative intent, and where that can be determined from the plain meaning of the words used, the plain meaning controls and a court need not go further or apply other means of interpretation. *Gulbrandson v. Cary*, 272 Mont. 494, 500, 901 P.2d 573, 577 (1995); *State v. Ankeny*, 2010 MT 224, ¶ 21, 358 Mont. 32, 243 P.3d 391. Statutory terms must be interpreted reasonably and logically, and given the natural and popular meaning in which they are usually understood. *Jones v. Judge*, 176 Mont. 251, 254, 577 P.2d 846, 848 (1978); *Maney v. La. Pac. Corp.*, 2000 MT 366, ¶ 19, 303 Mont. 398, 15 P.3d 962.

¶9    The Legislature need not define every term it employs in a statute. If a term is one of common usage and is readily understood, a court should presume that a reasonable

4

person of average intelligence can understand it. The failure to include definitions of all terms does not automatically make a statute vague as long as the meaning is clear and provides a defendant with adequate notice of the proscribed conduct. *State v. Trull*, 2006 MT 119, ¶ 33, 332 Mont. 233, 136 P.3d 551.

¶10 The common understanding of the word "prisoner" is that it describes a person who is held, confined or detained by someone else. The State correctly argued below that a "prisoner" commonly means a person whose liberty is restrained by law enforcement personnel, for any reason, including by reason of a conviction and sentence to a state prison.[1] The District Court incorrectly determined that this argument only proved that the word "prisoner" in the statute was ambiguous. The fact that a term such as "prisoner" may apply to individuals in several different circumstances does not make it ambiguous, it only makes the term inclusive.

¶11 The District Court's constrained definition of "prisoner" omits a wide range of people who can find themselves in some kind of detention. Those include but are not limited to anyone doing time in a county jail; anyone being held on charges waiting trial; anyone being held after arrest and awaiting an initial appearance; and, as in the present

---

[1] The State cited definitions of "prisoner" from *Merriam-Webster Collegiate Dictionary* (10th ed.)(a person deprived of liberty and kept under involuntary restraint, confinement or custody); *American Heritage Dictionary* (5th ed.)(a person held in custody, captivity or a condition of forcible restraint, especially while on trial or serving a prison sentence); and *Black's Law Dictionary* (9th ed.)(a person who is serving time in prison; a person who has been apprehended by a law-enforcement officer and is in custody, regardless of whether the person has yet been put in prison).

case, any detained juvenile. It is evident that the common understanding of the term "prisoner" varies from the narrow interpretation applied by the District Court.

¶12 The language of the statute itself suggests a broader definition of the word "prisoner" than the one adopted by the District Court. Subsection (1)(b) of § 45-5-204, MCA, expressly applies to situations where improper conduct is used to "obtain a confession from the prisoner." While a confession might be sought from a person already convicted of a crime, generally a confession would most commonly be sought from a person who is detained after arrest or after being charged.

¶13 The word "prisoner" is one in common usage with a common understanding. It is clear from the ordinary and common understanding of the word that "prisoner" includes a person detained by law enforcement officers, confined to a small room, and shackled hand and foot. Nothing in the statute or elsewhere in Montana law precludes application of the statute to the facts alleged in the information. The District Court's conclusion that such a person is not a "prisoner" is incorrect.

¶14 K.J. was a "prisoner" as provided in § 45-5-204(1), MCA, and the charging information filed in this case was adequate to state an offense.

¶15 The District Court is reversed and this matter is remanded for further proceedings consistent with this Opinion.

/S/ MIKE McGRATH

6

We concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ BRIAN MORRIS


Justice Jim Rice, dissenting.

¶16     The sum total of the Court's analysis of the legal question before us is to repeat seven times that the "common" meaning of the term "prisoner" requires that K.J. was one. This lay[1] approach to the issue may be well suited for coffee klatch world-problem-solving conducted at the corner café, but should not trump the application of legal principles governing this case. I believe the District Court properly applied the canons of statutory construction to reach its determination.

¶17     As the District Court noted, the term "prisoner" is not as straightforward as the State contends, as even the dictionary definitions the State has offered tend to incorporate the idea that a prisoner is confined due to conviction, service of a prison sentence, or a pending trial on criminal charges. The Legislature has enacted various code provisions that define or use the term "prisoner" in connection with service of a prison sentence. *See* § 46-31-101, MCA (describing a "prisoner" as one who "has entered upon a term of imprisonment in a penal or correctional institution"); § 46-1-202(16), MCA (defining

---

[1] "Lay: adj. . . . 3: not of a particular profession [the ~ public]; *also*: lacking extensive knowledge of a particular subject." *Merriam-Webster's Collegiate Dictionary* 660 (10th ed., Merriam-Webster 1998).

parole as "the release to the community of a prisoner . . . prior to the expiration of the prisoner's term"). Similarly, the Legislature has commonly distinguished the term "prisoner" by using other terms to reference other detainees. *See* § 7-32-2208, MCA (distinguishing an "inmate committed to a detention center for trial or examination" and "a prisoner convicted" of an offense); § 7-32-2144, MCA (a sheriff is entitled to state reimbursement for "delivering prisoners at the state prison or a juvenile correctional facility or mentally ill persons at the Montana state hospital"). Consistent with this general distinction, the Criminal Law Commission Comments to the subject statute, § 45-5-204, MCA, indicate that the statute was designed to support a "policy that a sentence to imprisonment should be rehabilitative in nature. Clearly, little rehabilitation or reorientation to social norms can be accomplished when those responsible for the custody and care of prisoners mistreat them."

¶18 "'[A]mbiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *United States v. Bass*, 404 U.S. 336, 347, 92 S. Ct. 515, 522 (1971) (citing *Rewis v. United States*, 401 U.S. 808, 812, 91 S. Ct. 1056, 1059 (1971)). Our Court has likewise applied this "classic rule of construction of criminal statutes," sometimes referred to as the rule of lenity. *See State v. Goodwin*, 249 Mont. 1, 23-24, 813 P.2d 953, 966-67 (1991); *but see State v. Turner*, 262 Mont. 39, 49, 864 P.2d 235 (1993).

¶19 "We seek to implement the legislature's intent when we interpret a statute." *State v. Hicks*, 2013 MT 50, ¶ 19, 369 Mont. 165, 296 P.3d 1149 (citation omitted); § 1-2-102,

MCA ("In the construction of a statute, the intention of the legislature is to be pursued if possible."). The District Court closely analyzed this uncertain statute and, on the basis of the statutory context and legislative history, determined that the Legislature had not clearly expressed an intention to include detainees beyond those prisoners who are subject to a sentence of imprisonment. "'Statutory construction is a 'holistic endeavor' and must account for the statute's text, language, structure, and object.'" *State v. Heath*, 2004 MT 126, ¶ 24, 321 Mont. 280, 90 P.3d 426 (citation omitted). "When the plain meaning of a statute is subject to more than one reasonable interpretation . . . we will examine the legislative history to aid our interpretation." *Heath*, ¶ 33.

¶20 I agree with the District Court's analysis and its conclusion that the Legislature did not clearly extend this statute to the acts alleged to have been committed by Madsen. Further, it is not our duty to extend it. "[L]egislatures and not courts should define criminal activity." *Bass*, 404 U.S. at 348, 92 S. Ct. at 523. While there are other statutes under which Madsen could have been charged, I believe dismissal under this statute was warranted.

¶21 I would affirm the District Court.


/S/ JIM RICE


Justice Laurie McKinnon joins in the dissenting Opinion of Justice Rice.

/S/ LAURIE McKINNON