FILED

June 9 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0352

DA 14-0352

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 157

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

TAYLOR NELSON PINDER,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
                    In and For the County of Silver Bow, Cause No. DC-13-77
                    Honorable Kurt Krueger, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Jennifer A. Giuttari, Law Office of Jennifer A. Giuttari, PLLC;
            Missoula, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman,
            Assistant Attorney General; Helena, Montana

            Eileen Joyce, Butte-Silver Bow County Attorney, Michael Clague, Deputy
            County Attorney; Butte, Montana

                                Submitted on Briefs:  April 15, 2015
                                     Decided:  June 9, 2015

Filed:

                             _____
                                          Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1    Taylor Nelson Pinder (Pinder) appeals from the order of the Second Judicial District Court, Silver Bow County, denying his motion to dismiss the Driving Under the Influence (DUI) charge against him. We affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2    On February 14, 2013, Pinder crashed a truck into a light post outside the Super 8 Motel on Harrison Avenue in Butte, Montana. Butte-Silver Bow County police officers responded to the scene and, with the help of witnesses, located Pinder exiting a bathroom in the dining room of the motel. Pinder appeared intoxicated and was having difficulty standing, walking, speaking, or following verbal commands. The officers called for an ambulance to take Pinder to the hospital.

¶3    Shortly thereafter, a motel employee gave the officers a can of aerosol dust-remover that had been discovered in the same bathroom Pinder had exited earlier. The officers knew that dust-remover can be used as an inhalant.

¶4    At the hospital, Pinder was arrested for DUI. Pinder then consented to a blood draw for toxicological testing. The toxicology report revealed that Pinder's blood contained 6.2 mcg/ml of 1,1-Difluoroethane (DFE), a chemical found in dust-remover.

¶5    Because Pinder had three prior DUI convictions, he was charged with felony DUI in violation of § 61-8-401(c), MCA, and misdemeanor reckless driving in violation of § 61-8-301(1)(a), MCA. He pled not guilty to both counts.

¶6    On September 30, 2013, Pinder filed a motion to dismiss the DUI charge. An evidentiary hearing was held on October 31, 2013. At the hearing, the court heard

2

evidence that DFE is a recognized substance of abuse and its use can result in symptoms including lightheadedness, disorientation, loss of inhibition, dizziness, hallucinations, delusions, impaired judgment, cardiac arrest, and death. However, Pinder argued that Montana's DUI statutes do not define "drug," and therefore the District Court should have used use the definition of drug from § 37-7-101(16), MCA, (the "Pharmacy" chapter of Title 37, "Professions and Occupations") because it is the only section in the MCA that defines the term "drug." According to Pinder, DFE does not fit within that definition of "drug" and thus the DUI charge against him should be dismissed. The court denied Pinder's motion in a written order on November 6, 2013.

¶7 Pinder entered into a plea agreement with the State and the court accepted his guilty plea on November 15, 2013. As part of the agreement, Pinder reserved his right to appeal the District Court's denial of his motion to dismiss. Though Pinder later violated the terms of the plea agreement by failing to comply with conditions of his bail, the State does not contest Pinder's right to appeal the District Court's decision.

¶8 Pinder now appeals the District Court's denial of his motion to dismiss.

## STANDARD OF REVIEW

¶9 We review a district court's decision on a motion to dismiss a criminal case, and its decision on the interpretation of a statute, de novo for correctness. *State v. Madsen*, 2013 MT 281, ¶ 6, 372 Mont. 102, 317 P.3d 806.

## DISCUSSION

¶10 Section 61-8-401(1)(c), MCA, states that it is unlawful for a person who is under the influence of "any other drug to drive or be in actual physical control of a vehicle

3

within this state."[1]  "'Under the influence' means that as a result of taking into the body alcohol, drugs, or any combination of alcohol and drugs, a person's ability to safely operate a vehicle has been diminished." Section 61-8-401(3)(a), MCA.

¶11    Pinder argues that, because the term "drug" is not specifically defined in Montana's DUI statutes or elsewhere in the criminal code, the District Court should have applied the definition of "drug" from § 37-7-101(16), MCA, which provides definitions related to the licensing and regulation of pharmacies. That statute states:

> As used in this chapter, the following definitions apply:
>
> .   .   .
>
> (16) "Drug" means a substance:
> (a) recognized as a drug in any official compendium or supplement;
> (b) intended for use in diagnosis, cure, mitigation, treatment, or prevention of disease in humans or animals;
> (c) other than food, intended to affect the structure or function of the body of humans or animals; and
> (d) intended for use as a component of a substance specified in subsection [(a), (b), or (c)].

Sections 37-3-101(16)(a)-(d), MCA. According to Pinder, DFE does not meet this definition and should not be considered a "drug" for the purposes of § 61-8-401, MCA. Therefore, Pinder was not driving under the influence of a "drug" and the DUI charge against him should have been dismissed by the District Court.

¶12    In denying Pinder's motion to dismiss, the District Court reasoned that it would be illogical and counter to legislative intent to use the pharmaceutical definition of "drug" in applying the DUI statute. Instead, the court used a plain meaning definition of "drug"

---

[1] The "any other" in the statute is a reference to § 61-8-401(1)(b), MCA, which specifically prohibits driving under the influence of a drug that is designated a "dangerous drug" by the board of pharmacy under § 50-32-202, MCA. DFE is not currently designated a "dangerous drug" in Montana.

taken from *Black's Law Dictionary*, "[a] natural or synthetic substance that alters one's perception or consciousness." 571, (Bryan A. Garner ed., 9th ed. 2009). The court concluded that DFE qualified as a "drug" under that definition and therefore did not dismiss the DUI charge.

¶13 Pinder argues that we are compelled to use the pharmacy definition of "drug" defined by § 1-2-107, MCA, which states:

> [w]henever the meaning of a word or phrase is defined in any part of this code, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears.

The State counters that the legislature's use of the phrase "[a]s used in this chapter" prefacing the pharmacy definition section plainly shows the legislature's contrary intention to use of the pharmacy definition of "drug" in the DUI statute.

¶14 In the past we have taken disparate approaches to whether prefatory phrases in statutory definitions such as "for the purposes of this section" or "as used in this Title," satisfy the "contrary intention" language of § 1-2-107, MCA. In one line of cases we stated that such application phrases constitute contrary intentions and preclude the use of those definitions in sections not mentioned. In other cases we have held that the phrases indicate only that the legislature intended the particular application of the definitions in those parts of the code without preventing use of those definitions in other parts of the code.

¶15 As an example of the exclusionary approach, in *Richter v. Rose*, 1998 MT 165, 289 Mont. 379, 962 P.2d 583, we refused to apply the definition of "farm" given in the Montana Probate Code to the MCA sections covering eminent domain, because that

5

"farm" definition was specifically applied to the Probate Code. *Richter*, ¶¶ 17-19. Similarly, in *Billings Firefighters Local 521, Int'l Ass'n of Firefighters v. City of Billings*, 1999 MT 6, 293 Mont. 41, 973 P.2d 222, we refused to apply to Title 7, chapter 3, MCA, a definition of "structure" that was applied to certain sections of Title 7, chapter 1, MCA. *Billings Firefighters*, ¶ 19. In *State v. Merry*, 2008 MT 288, 345 Mont. 390, 191 P.3d 428, while attempting to define "supervision and direction" (as used in the statutes regulating the administration of blood tests in DUI cases) we refused to apply definitions for "direct supervision," "general supervision," or "qualified medical direction" given in the sections regulating dental hygienists, hearing aid dispenser trainees, and respiratory care. We reasoned that the inclusion of the phrases "[for] the purposes of this section," and "[a]s used in this chapter," demonstrated that the legislature "plainly has limited the reach of these definitions, and thus, they cannot properly define the terms of [the DUI blood test section]." *Merry*, ¶ 15. Thus, under this line of cases, application phrases on definitions are seen as exclusionary, precluding application of the definition to other code sections.

¶16 On the other hand, the inclusionary approach is found in *Mountain View Educ. Ass'n v. Mountain View Sch.*, 227 Mont. 288, 738 P.2d 1288 (1987), where we held that educators at Mountain View School were eligible to receive state benefits under Title 2, chapter 18, because they did not qualify as "schoolteachers" as used in that chapter. We reached that conclusion by determining that the Mountain View School employees did not fit the definition of "teacher" given in Title 20. We applied that definition in spite of the language "as used in this title" prefacing the Title 20 definition section. *Mountain*

6

*View Educ. Ass'n*, 227 Mont. at 290-291, 738 P.2d at 1289-1290. Likewise, in *Dept. of Rev. v. Gallatin Outpatient Clinic*, ("*Gallatin*") 234 Mont. 425, 763 P.2d 1128 (1988), we allowed the definition of "hospital" given in Title 50 to be applied to a tax statute under Title 15, despite limiting prefatory language in the definition. We stated:

> "[t]he use by the legislature in Section 50-5-101, MCA, of the phrase 'as used in parts 1 through 4 of this chapter' does not show the legislature's plain intent that the definitions were only to be applied in those parts of the code. Those words only indicate that the legislature intended the particular application of the definitions in those parts of the code, without limitation to the general use of the definitions in other parts of the code, pursuant to Section 1-2-107, MCA."

*Gallatin*, 234 Mont. at 430, 763 P.2d at 1131.

¶17 More recently, in *Judicial Stds. Comm'n v. Not Afraid*, 2010 MT 285, 358 Mont. 532, 245 P.3d 1116, we applied the definition of "public office" given in Title 13 to issues involving the Montana Constitution and the Code of Judicial Conduct. We applied the definition despite the phrase "[a]s used in this title" prefacing the definition section. In doing so, we cited § 1-2-107, MCA, and *Gallatin*, and stated "[w]e see no clear indication that the statutory definition of 'public office' cannot be referenced for issues arising outside of Title 13." *Judicial Stds.*, ¶ 20. Under this line of cases, limitation clauses are seen as inclusionary, specifically applying the given definition to the listed

7

sections, but not precluding application of the definition to other sections where appropriate.[2]

¶18    In this case, however, we need not delve into the use of the phrase "as used in this chapter" in order to see that the legislature did not intend the pharmacy definition of "drug" to apply to the DUI statute. Words and phrases used in the statutes of Montana are construed according to context. Section 1-2-106, MCA. Thus, whether or not a "contrary intention" to using a given definition plainly appears must be considered according to context.

¶19    The context of the locations of the two uses of the term "drug" in the MCA at issue here makes it clear that the legislature did not intend to apply the pharmacy definition of "drug" to the DUI statute. The purpose of the pharmacy statutes is to regulate the administration of legal substances of clinically recognized medical value by licensed professionals. The purpose of the DUI statutes is to protect public safety by punishing individuals who choose to drive after ingesting "alcohol, drugs, or any combination of alcohol and drugs" that causes their "ability to safely operate a vehicle [to be] diminished." Section 61-8-401(3), MCA. Though some substances that would qualify as a "drug" under the pharmacy statute are intoxicating, many intoxicating substances that would impair a person's ability to drive fall outside that definition. We

---

[2] It also bears mentioning that the legislature is fully capable of expressly limiting definitions to apply *only* to a specified portion of the MCA. *See, e.g.* § 75-15-203, MCA ("As used in this part only, the following definitions apply: . . . ."; § 17-5-1302(15), MCA ("For this part only, the Montana higher education student assistance corporation . . . is considered a state issuer."); § 82-4-203(50)(b), MCA ("For the purposes of this part only, strip mining also includes remining and coal preparation.").

do not think the legislature intended to limit the scope of the DUI statute by applying it only to drivers who may have diminished their driving ability by ingesting a substance regulated by pharmacists. The language of the statute plainly shows that the legislature intended to punish individuals who drive after ingesting "any" substance that diminishes their driving ability. Sections 61-8-401(1)(c) and -401(3), MCA. Here, because "a contrary intention plainly appears," § 1-2-107, MCA, does not compel us to apply the pharmacy definition of "drug" to the DUI statute. The District Court did not err when it refused to do so.

¶20 Having determined that the pharmacy definition does not apply to the DUI statute, we turn to whether the District Court used an appropriate definition for the term "drug." We conclude that the court was correct. We recently stated that:

> [a] judge's role in statutory interpretation is to "ascertain and declare what is in terms or substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA. A court's function is to determine legislative intent, and where that can be determined from the plain meaning of the words used, the plain meaning controls and a court need not go further or apply other means of interpretation. Statutory terms must be interpreted reasonably and logically, and given the natural and popular meaning in which they are usually understood.
>
> The Legislature need not define every term it employs in a statute. If a term is one of common usage and is readily understood, a court should presume that a reasonable person of average intelligence can understand it. The failure to include definitions of all terms does not automatically make a statute vague as long as the meaning is clear and provides a defendant with adequate notice of the proscribed conduct.

*Madsen*, ¶¶ 8-9 (citations omitted).

¶21 The common and readily understood meaning of the word "drug" in the context of traffic regulations is a substance that alters one's perception, consciousness, or impairs physical or mental abilities. This meaning is clear and provides adequate notice that driving a vehicle while under the influence of such a substance is prohibited. Furthermore, the definition comports with the legislature's definition of "under the influence," that is, "as a result of taking into the body alcohol, drugs, or any combination of alcohol and drugs, a person's ability to safely operate a vehicle has been diminished." Section 61-8-401(3)(a), MCA. As stated above, the legislature's intent in enacting the DUI statutes was plainly to protect public safety by punishing individuals who drive after ingesting substances that impair their ability to operate motor vehicles. The District Court's definition of "drug" is consistent with the legislature's objectives in that regard.

## CONCLUSION

¶22 The District Court was correct when it did not apply the pharmacy definition of "drug" and instead used a commonly understood plain meaning definition. Under that definition, DFE could be considered a drug and driving while under the influence of DFE a violation of § 61-8-401(1)(c), MCA.

¶23 Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ JIM RICE

10