FILED

11/04/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0735

DA 24-0735

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 253

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

ZACHARY ELLIS,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC-24-27
Honorable Rienne H. McElyea, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Jami Rebsom, Jami Rebsom Law Firm, PLLC, Livingston, Montana

        For Appellee:

        Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
Attorney General, Helena, Montana

        Audrey Cromwell, Gallatin County Attorney, Henry Westesen,
Deputy County Attorney, Bozeman, Montana

Submitted on Briefs:  September 10, 2025

Decided:  November 4, 2025

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1      On December 11, 2023, Zachary T. Ellis (Ellis) was convicted of misdemeanor Driving Under the Influence (DUI), third offense, in violation of § 61-8-1002(1)(a), MCA, following a bench trial in Gallatin County Justice Court.  Prior to trial, the Justice Court denied Ellis's motions to suppress evidence which alleged a lack of particularized suspicion justifying the investigation, an improper search and seizure, and a violation of *Miranda*.  Ellis appealed the denials of his motions to the Eighteenth Judicial District Court, Gallatin County.  The District Court affirmed the Justice Court and upheld Ellis's conviction.  Ellis now appeals to this court.  We affirm.

¶2      We restate the issues on appeal as follows:

> *Issue One: Whether there was particularized suspicion to investigate Ellis for driving under the influence.*
>
> *Issue Two: Whether there was an unlawful search and seizure.*
>
> *Issue Three: Whether there was a custodial interrogation that required a Miranda advisement when Ellis made statements to law enforcement.*
>
> *Issue Four: Whether this Court can address Ellis's unpreserved claim that the results of his blood test were admitted without a sufficient foundation.*
>
> *Issue Five: Whether there was sufficient evidence to convict Ellis of driving under the influence.*

### FACTUAL AND PROCEDURAL BACKGROUND

¶3      On March 2, 2023, at around 5:00 p.m., Montana Highway Patrol Trooper Alex Becken (Trooper Becken) was dispatched to a single vehicle crash on Huffine Lane near Love Lane in Gallatin County.  An individual called 911 after witnessing a black Jeep Liberty go into a ditch, hit a sign that broke out the back windows, and then drive away.

2

The driver told the caller, "I'm fine, I just passed out, I fell asleep for a second." A second caller also saw the Jeep Liberty hit the sign and go into the ditch. Both callers later testified at trial that on the day of the crash road conditions were dry.

¶4 Dispatch provided Trooper Becken with the description of the vehicle and the vehicle's license plate number. Trooper Becken began looking for the Jeep in the reported crash area and observed two traffic signs down and tire marks leading into a nearby ditch. The license plate was registered to Ellis's wife, so Trooper Becken proceeded to Ellis's address.

¶5 Sergeant Brian Taylor (Sergeant Taylor) of the Gallatin County Sheriff's Office was also dispatched to the accident and learned the direction the Jeep was headed. He drove towards the Ellis residence located in a subdivision near Belgrade, Montana. Sergeant Taylor observed a male walking away from the Jeep, which was parked in the street, and up the driveway. Trooper Becken arrived on the scene around the same time. The Jeep at the residence matched the plate number provided by dispatch.

¶6 The Jeep had damage to the front bumper and a broken window on the rear driver's side. The male identified himself as Zachary Ellis. Ellis had a dazed expression, excessive mucus on his sleeve, and watery, bloodshot eyes. When asked by Sergeant Taylor where he was coming from, Ellis disclosed "[The hardware store] . . . I was on Huffine." Trooper Becken asked Ellis what happened to the front of the Jeep and Ellis responded, "I passed out." Soon after, Sergeant Taylor asked Ellis what he purchased at the hardware store and

3

Ellis responded that he bought "some duster." [1]  Sergeant Taylor further inquired because he saw "a bunch of snot" on Ellis's shirt.  He then asked Ellis whether he had sniffed the duster.  "I did try that.  And . . . that is not good."  Sergeant Taylor asked, "[Did you] try that while you were driving?"  Ellis responded, "apparently."  After stepping away, Trooper Becken returned to Sergeant Taylor and Ellis when Ellis stated, "that's probably what made me pass out."  Trooper Becken subsequently administered Standardized Field Sobriety Tests, (SFSTs).

¶7     Trooper Becken had Ellis perform the Horizontal Gaze Nystagmus (HGN) test, walk and turn test, the one leg stand test, and the Romberg test.  Ellis showed clues of impairment on a majority of the tests.  Additionally, Trooper Becken observed Ellis had heavy eyelids and body tremors during testing.

¶8     After officers asked if Ellis still had the can of Dust-Off, Ellis provided the can he consumed.  Ellis had placed the can of Dust-Off in the back seat of a sedan parked in his driveway.  While holding the can, Trooper Brecken noted the Dust-Off can was nine-tenths empty.  Ellis confirmed he was the one driving the Jeep and that he had not consumed any Dust-Off or alcohol after the crash.

¶9     Ellis provided a preliminary breath sample that indicated he had no alcohol in his system.  Based on his observations and conversation with Ellis, Trooper Becken arrested

---

[1] Duster, generally used for dusting off electronics, can result in impairment if ingested.  Possible impairment includes confusion, slurred speech, and unconsciousness.  At trial, both Sergeant Taylor and Trooper Becken testified about the impact of ingesting Dust-Off.  Dust-Off contains difluoroethane (DFE), which typically produces a short high before the person who huffed it passes out.

4

Ellis for DUI. Ellis consented to providing a blood sample and completed a blood draw at Bozeman Health Deaconess Hospital with Trooper Becken in attendance. Ellis was subsequently booked into the Gallatin County Detention Center. The toxicology report detected DFE in Ellis's system.

¶10 On May 17, 2023, Ellis filed motions to suppress evidence asserting a lack of particularized suspicion, an unlawful search and seizure, and a violation of *Miranda*. On August 14, 2023, the Justice Court denied his motions to suppress. A bench trial was held on December 11, 2023. In its case-in-chief, the State called forensic toxicologist Scott Larson (Larson). The State moved to admit Ellis's toxicology report through Larson and Ellis objected on grounds of foundation. The Justice Court overruled the objection, admitted the toxicology report, and found Ellis guilty of DUI on the same day. Ellis was sentenced on December 20, 2023, to one year in jail with all but forty-five days suspended.

¶11 Ellis filed a notice of appeal in the Gallatin County District Court on January 12, 2024. The District Court affirmed his conviction and the denial of his motions to suppress on October 3, 2024. It reasoned that law enforcement had ample particularized suspicion to investigate the accident and the investigation developed into particularized suspicion for a DUI. The District Court concluded that Ellis had no reasonable expectation of privacy in his driveway which was accessible by the public, and that Ellis had voluntarily consented to giving the can of Dust-Off to law enforcement. The court determined that there was no custodial interrogation of Ellis that required *Miranda* warnings be given.

¶12 On appeal to this Court, Ellis argues the Justice Court and District Court erred by denying his motions to suppress. He seeks a reversal of his conviction and a remand of his

5

case without that evidence. Ellis also argues that the State failed to meet its burden of proof at trial, therefore he should be acquitted of the DUI charge.

## STANDARDS OF REVIEW

¶13 On Ellis's appeal from the Justice Court, the District Court functioned as an intermediate appellate court. *See* §§ 3-5-303 and 3-6-110, MCA; *City of Bozeman v. Cantu*, 2013 MT 40, ¶ 10, 369 Mont. 81, 296 P.3d 461. In his appeal to this Court, we review the case as if the appeal originally had been filed in this Court. *Cantu*, ¶ 10 (citation omitted). "We examine the record independently of the district court's decision, applying the appropriate standard of review." *Cantu*, ¶ 10 (citation omitted).

¶14 "We review a district court's denial of a motion to suppress to determine whether its findings of fact are clearly erroneous and whether its interpretation and application of the law is correct." *State v. Kenfield*, 2009 MT 242, ¶ 15, 351 Mont. 409, 213 P.3d 461 (citing *State v. Wheeler*, 2006 MT 38, ¶ 12, 331 Mont. 179, 134 P.3d 38). If a review of the record reveals a mistake has been made, the effect of the evidence has been misapprehended, or there is not substantial evidence to support findings of fact, the findings are clearly erroneous. *Kenfield*, ¶ 15 (citing *Wheeler*, ¶ 12).

¶15 Whether there is sufficient evidence to convict a defendant is reviewed de novo. *State v. Trujillo*, 2008 MT 101, ¶ 8, 342 Mont. 319, 180 P.3d 1153 (citing *State v. Swann*, 2007 MT 126, ¶ 19, 337 Mont. 326, 160 P.3d 511). This Court reviews the evidence in a light most favorable to the prosecution when determining the sufficiency of the evidence. *State v. Weitzel*, 2006 MT 167, ¶ 7, 332 Mont. 523, 140 P.3d 1062 (citing *State v. Weigand*, 2005 MT 201, ¶ 7, 328 Mont. 198, 119 P.3d 74). The Court must find that "any rational

6

trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Price*, 2002 MT 150, ¶ 14, 310 Mont. 320, 50 P.3d 530 (citing *State v. Merrick*, 2000 MT 124, ¶ 7, 299 Mont. 472, 2 P.3d 242).

**DISCUSSION**

¶16　*Issue One: Whether there was particularized suspicion to investigate Ellis for driving under the influence.*

¶17　Ellis contends that law enforcement unlawfully prolonged the stop with no evidence or articulable facts to support Ellis was impaired by any substance. The State argues that law enforcement had particularized suspicion based on Ellis's erratic driving and one-car accident, and from Ellis's behavior once they encountered him.

¶18　The United States Constitution and the Montana Constitution protect citizens from unreasonable searches and seizures. U.S. Const. amend. IV; Mont. Const. art. II, § 11. Government searches and seizures typically must "occur pursuant to a judicial warrant issued on probable cause." *City of Missoula v. Kroschel*, 2018 MT 142, ¶ 10, 391 Mont. 457, 419 P.3d 1208; U.S. Const. amend. IV; Mont. Const. art. II, § 11. An exception to the warrant requirement of the Fourth Amendment is particularized suspicion. *State v. Roberts*, 1999 MT 59, ¶ 12, 293 Mont. 476, 977 P.2d 974.

¶19　Officers may stop any person that is observed in circumstances that create a particularized suspicion that the person has committed an offense. § 46-5-401(1), MCA. The State must satisfy two elements to show particularized suspicion: "(1) objective data from which an experienced officer can make certain inferences; and (2) a resulting suspicion that the occupant of a certain vehicle is or has been engaged in wrongdoing or

was a witness to criminal activity." *State v. Gopher*, 193 Mont. 189, 194, 631 P.2d 293, 296 (1981). "Particularized suspicion requires objective data from which an experienced police officer can make certain inferences and a resulting suspicion that the occupant of the vehicle is or has been engaged in wrongdoing." *State v. Estes*, 2017 MT 226, ¶ 17, 388 Mont. 491, 403 P.3d 1249 (citing *State v. Martinez*, 2003 MT 65, ¶ 22, 314 Mont. 434, 67 P.3d 207).

¶20   A stop may not last longer than necessary to effectuate the purpose of the stop. § 46-5-403, MCA. "An officer need not be certain, or even correct, that a person is engaged in criminal activity." *State v. Harning*, 2022 MT 61, ¶ 18, 408 Mont. 140, 507 P.3d 145 (citing *State v. Wilson*, 2018 MT 268, ¶ 28, 393 Mont. 238, 430 P.3d 77). Law enforcement may expand the "scope of an investigative stop beyond its initial purpose" based on additional information acquired during the stop. *State v. Stanley*, 2024 MT 271, ¶ 29, 419 Mont. 61, 558 P.3d 1147 (citations omitted). Particularized suspicion for a stop can serve as particularized suspicion for administering field sobriety tests. *Hulse v. State,* 1998 MT 108, ¶ 39, 289 Mont. 1, 961 P.2d 75. Particularized suspicion is assessed under the totality of the circumstances. *State v. Zietlow*, 2017 MT 148, ¶ 9, 388 Mont. 26, 396 P.3d 740 (citing *State v. Gill*, 2012 MT 36, ¶ 15, 364 Mont. 182, 272 P.3d 60).

¶21   Here, law enforcement was dispatched near Huffine Lane to investigate a single vehicle accident after Ellis crashed into street signs, went into a ditch, and then fled the scene. Dispatch received calls from at least two drivers who later testified at the bench trial held in Justice Court. Once dispatched, Trooper Becken observed damage to street signs and tire marks in the ditch near Huffine Lane. Trooper Becken and Gallatin County

Sheriff's Deputies responded to the Ellis home where Trooper Becken observed damage to the front bumper and a broken-out window on the rear driver's side of the Jeep. Ellis had watery, bloodshot eyes and was dazed and confused. Upon initial inquiry from law enforcement, Ellis indicated that he had purchased Dust-Off and "apparently" ingested it. Officers had particularized suspicion for the stop because of Ellis's erratic driving. *See Hulse*, ¶ 39 (driving erratically can serve as the particularized suspicion for the officer to stop the driver and administer field sobriety tests). Ellis disclosed to officers that he drove on Huffine Lane, which confirmed the tips from callers to 911 about an erratic driver in a black Jeep near Huffine Lane. Trooper Becken then observed the damage to street signs near Huffine Lane and to the Jeep at Ellis's residence. Ellis told officers that he passed out and admitted to sniffing the duster. Ellis provided the objective data that led officers to believe he had been involved in committing a crime. *Gopher*, 193 Mont. at 194, 631 P.2d at 296. As this Court identified in *Hulse*, "[t]he case at bar is a good example of . . . an escalating situation." *Hulse*, ¶ 41.

¶22  Ellis quotes *Hulse*:

> [I]f an officer only observed an individual driving with a broken taillight and after making his initial stop he did not observe any signs of intoxication, he would not have particularized suspicion that the driver was driving under the influence, and, therefore, would be prohibited from administering field sobriety tests.

*Hulse*, ¶ 40. Ellis's point, however, is misplaced. Ellis incorrectly asserts that officers did not see any signs of impairment, therefore prolonging the stop without any particularized suspicion. At trial, Trooper Becken reasoned that based on the totality of the circumstances, he had particularized suspicion because the crash occurred on dry road

conditions with no explanation for it; a witness observed Ellis passed out; Ellis fled the scene of the crash; Trooper Becken's own observations of Ellis; the amount of mucus Ellis had on his sleeve; and Ellis admitted that he consumed the Dust-Off. We conclude officers lawfully expanded the scope of the investigative stop based on information acquired during the stop. The District Court correctly denied Ellis's motion to dismiss for lack of particularized suspicion.

¶23    *Issue Two: Whether there was an unlawful search and seizure.*

¶24    Montana's Constitution provides its citizens with broader privacy protections than its federal counterpart. *State v. Tackitt*, 2003 MT 81, ¶ 20, 315 Mont. 59, 67 P.3d 295 (citing *State v. Elison*, 2000 MT 288, ¶ 46, 302 Mont. 228, 14 P.3d 456). "As a threshold matter of law, the Fourth Amendment and Mont. Const. art. II, § 11, protection against unreasonable searches and seizures applies only if and when a government 'search' or 'seizure' actually occurs." *Stanley*, ¶ 19. This Court determines whether an unlawful search or seizure occurred "by analyzing three factors: 1) whether the person challenging the state's action has an actual subjective expectation of privacy; 2) whether society is willing to recognize that subjective expectation as objectively reasonable; and 3) the nature of the state's intrusion." *State v. Goetz*, 2008 MT 296, ¶ 27, 345 Mont. 421, 191 P.3d 489. A search does not occur where there is no objectively reasonable expectation of privacy. *Goetz*, ¶ 25 (citing *State v. Hamilton*, 2003 MT 71, ¶ 17, 314 Mont. 507, 67 P.3d 871; *State v. Scheetz*, 286 Mont. 41, 46, 950 P.2d 722, 724-25 (1997)).

> [I]n Montana a person may have an expectation of privacy in an area of land that is beyond the curtilage which the society of this State is willing to recognize as reasonable, and that where that expectation is evidenced by

fencing, "No Trespassing," or similar signs, or "by some other means [which] indicate[s] unmistakably that entry is not permitted."

¶25    *State v. Bullock*, 272 Mont. 361, 384, 901 P.2d 61, 75-76 (1995) (quoting *People v. Scott*, 593 N.E.2d 1328, 1338 (N.Y. 1992)). "Society's recognition of the expectation of privacy as reasonable hinges on the unique facts of each situation." *City of Whitefish v. Large*, 2003 MT 322, ¶ 16, 318 Mont. 310, 80 P.3d 427.

¶26    Ellis argues that officers conducted an illegal search and seizure by seizing Ellis in his driveway and searching his vehicles without a search warrant. The State contends that Ellis had no reasonable expectation of privacy and officers did not conduct an unlawful search because Ellis personally provided the Dust-Off to officers.

¶27    In *State v. Smith*, 2021 MT 324, 407 Mont. 18, 501 P.3d 398, the defendant argued that fencing around his property and the length of his driveway was evidence of an actual expectation of privacy. *Smith*, ¶ 19. We concluded the fence and length of the driveway did not result in a reasonable expectation because the fence had a gate that was kept open and there was nothing else to indicate "that entry to the driveway was not permitted." *Smith*, ¶ 19. However, when law enforcement arrived, Smith told the Deputy that he was trespassing and "that he needed to leave the property if he did not have a warrant." *Smith, ¶* 20. This Court held that once the defendant told the Deputy he was trespassing, he was asserting his right to privacy and had a reasonable expectation of privacy in his driveway. *Smith*, ¶ 29.

¶28    In *State v. Lanchantin*, 2024 MT 129, 417 Mont. 27, 550 P.3d 790, law enforcement conducted a DUI investigation in the driveway where the defendant was staying.

11

*Lanchantin*, ¶ 22. The driveway could not be seen by the public and was accessible by a private easement road, marked by a "No Trespassing" sign. *Lanchantin*, ¶ 22. This Court held that there was an actual expectation of privacy. *Lanchantin*, ¶ 22.

¶29 Here, Ellis approached law enforcement and spoke with Sergeant Taylor and Trooper Becken at the edge of his driveway. There were no signs, such as a "No Trespassing" sign, that indicated entry into the driveway was not permitted. Further, Ellis did not ask Sergeant Taylor or Trooper Becken to leave. Ellis manifested no reasonable expectation of privacy in his driveway. Here, the analysis fails on the first prong because there was no reasonable expectation of privacy. Without a reasonable expectation of privacy, there is no search.

¶30 Moreover, Ellis did not have a reasonable expectation of privacy in the exterior of his Jeep parked on a public roadway. In *Large*, this Court determined that the defendant did not have an expectation of privacy over her carport at her apartment building because the public could access it. *Large*, ¶ 18. In *State v. Ellinger*, 223 Mont. 349, 725 P.2d 1201 (1986), this Court found the arrest of the defendant was valid because the "[defendant] had a reduced expectation of privacy when he stepped outside of his house." *Ellinger*, 223 Mont. at 353, 725 P.2d at 1203. Here, Ellis did not have a reasonable expectation of privacy of the exterior of the Jeep parked on the street. Ellis parked the Jeep on a public street, where anyone could have taken photos of the vehicle as law enforcement did. Because there was no reasonable expectation of privacy, there was no search of the Jeep.

¶31 Ellis's next contention mischaracterizes the conversation between him and the officers. Ellis asserts that officers demanded Ellis tell them where the Dust-Off was located

and entered his vehicle to seize the Dust-Off. However, the evidence belies Ellis's contention. Trooper Becken asked if Ellis still had the can of Dust-Off and Ellis responded, "Yeah, I think I put it in that car right there." Sergeant Taylor subsequently looked into the window of the sedan parked in the driveway but did not enter the sedan. We have determined that Ellis did not have an "actual expectation of privacy" in his driveway, therefore officers were lawfully on Ellis's driveway. Ellis then retrieved the can and handed it to Trooper Becken. There was no search of the sedan and there was no seizure of the can of Dust-Off. The District Court correctly denied Ellis's motion to dismiss for an unlawful search and seizure.

¶32    *Issue Three: Whether there was a custodial interrogation that required a Miranda advisement when Ellis made statements to law enforcement.*

¶33    Both the United States and Montana Constitutions provide citizens with a right against self-incrimination. U.S. Const. amend. V; Mont. Const. art. II, § 25.

> [A] prosecutor may not use statements that stem from the custodial interrogation of a defendant unless the defendant has been warned, prior to questioning, that he has the right to remain silent, to have an attorney present, and that any statements he makes may be used as evidence against him.

*State v. Labbe*, 2012 MT 76, ¶ 13, 364 Mont. 415, 276 P.3d 848 (citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966)). There must be a custodial interrogation before *Miranda* becomes applicable. To determine whether a "custodial interrogation" occurred requires a two-step inquiry: "(1) whether the individual was 'in custody' and (2) whether the individual was subject to an 'interrogation.'" *State v. Maile*, 2017 MT 154, ¶ 12, 388 Mont. 33, 396 P.3d 1270 (quoting *State v. Munson*, 2007 MT 222, ¶ 21, 339 Mont. 68, 169 P.3d 364).

13

¶34 This Court has held that "public[] and temporary investigatory stops, to confirm or dispel suspicions, are not generally custodial interrogations." *Maile*, ¶ 15 (quoting *State v. Peters*, 2011 MT 274, ¶ 61, 362 Mont. 389, 264 P.3d 1124). A defendant is "in custody . . . if they have been deprived of their freedom of action in any significant way or their freedom of action has been curtailed to a degree associated with a formal arrest." *Elison*, ¶ 27 (quoting *State v. Dawson*, 1999 MT 171, ¶ 30, 295 Mont. 212, 983 P.2d 916). Whether a "custodial interrogation" occurred is made on a case-by-case basis. *State v. Staat*, 251 Mont. 1, 7, 822 P.2d 643, 646 (1991).

¶35 This Court has not defined a time parameter for roadside investigatory stops. *State v. Larson*, 2010 MT 236, ¶ 31, 358 Mont. 156, 243 P.3d 1130. Where questions remain confined to the context of the escalating suspicions, typically *Miranda* is not implicated. *State v. Bailey*, 2021 MT 157, ¶ 38, 404 Mont. 384, 489 P.3d 889. Law enforcement is not required to issue a *Miranda* advisement when simply investigating. *See State v. Hurlbert*, 2009 MT 221, ¶ 34, 351 Mont. 316, 211 P.3d 869; *State v. Allen*, 1998 MT 293, ¶¶ 12-14, 292 Mont. 1, 970 P.2d 81. In *Hurlbert*, we concluded that during an investigation where the defendant was not in custody, he was therefore "not entitled to a *Miranda* warning prior to being asked for consent to search the vehicle." *Hurlbert*, ¶ 34. In *Allen*, this Court held that the officer was not required to give *Miranda* warnings to the defendant after an investigation into a license plate violation expanded into a DUI investigation. *Allen*, ¶¶ 12-14. "Allen was not entitled to a *Miranda* warning following his traffic stop and prior to his arrest for driving under the influence of alcohol." *Allen*, ¶ 14.

¶36 Six factors are considered to determine whether a "custodial interrogation" occurred: "(1) place of the interrogation; (2) time of the interrogation; (3) persons present during the interrogation; (4) whether *Miranda* warnings were gratuitously given; (5) the length and mood of the interrogation; and (6) whether or not the suspect was arrested following the interrogation." *Labbe*, ¶ 17 (citations omitted).

¶37 Here, Ellis's questioning took place at the edge of his driveway, visible to the public. Ellis's questioning occurred in the early evening when it was still light outside. Sergeant Taylor and Trooper Becken were present during questioning, with Ellis's wife nearby. Questioning and field sobriety tests lasted just over twenty minutes. *Miranda* warnings were not given. The questioning resembled a conversation more than an interrogation; Ellis appeared relaxed and calm. When we apply the aforementioned factors, they do not lend themselves to a conclusion that Ellis was either in custody or interrogated.

¶38 Ellis argues that, "[i]nterrogation which occurs in the suspect's home is subject to *Miranda* where it occurs in a coercive environment in which the suspect's freedom of action has been significantly restricted." *Munson*, ¶ 28 (quotation omitted). *Munson*, however, can be distinguished from the instant case. In *Munson*, when the officer asked to enter the defendant's apartment and was told it was not a good time, he replied, "I need to visit with ya' right now." *Munson*, ¶ 30. Munson declined to consent to a search of the apartment and her body, but officers persisted with the interview. *Munson*, ¶ 30. Munson also refuted that there were drugs present in the apartment. *Munson*, ¶ 30. This Court concluded that the officers created a custodial atmosphere. *Munson*, ¶ 34.

15

¶39 When Sergeant Taylor arrived at Ellis's home, Ellis was near his garage and greeted Sergeant Taylor at the edge of the driveway. Sergeant Taylor asked him, "You wanna hang out for me for a second?" Ellis replied, "Yeah." Shortly after, when asked by officers, Ellis admitted to officers that he bought duster and huffed it. Trooper Becken asked how much of the Dust-Off he used, Ellis told officers which car the can was in and then retrieved it for law enforcement. Unlike *Munson*, here, officers did not create a coercive environment. Ellis did not indicate that he was unavailable to speak with law enforcement or wanted them to leave. Instead, Ellis acquiesced to their questions. Ellis answered affirmatively to questions posed by law enforcement, giving no reason for the officers to cease questioning. Further, Ellis's freedom of movement was never restricted during questioning and Ellis provides no support that it was. As recognized by both the Justice Court and District Court, Ellis was relaxed enough to lean against another vehicle in his driveway during the encounter. Officers did not create a custodial atmosphere.

¶40 In *Ellinger*, as here, the defendant was suspected of DUI and questioned at his home. *Ellinger*, 223 Mont. at 351, 725 P.2d at 1202. The defendant argued that his statements were inadmissible because he was not given a *Miranda* warning. *Ellinger*, 223 Mont. at 355, 725 P.2d at 1204. We held:

> Nowhere in the record did defendant indicate that he was unable to withdraw from the conversation, withdraw from the sobriety tests, and retreat into his house. Defendant had multiple opportunities to stop the interrogation and testing, yet freely consented to further proceeding. Therefore, defendant's *Miranda* rights did not engage until he had been placed in custody.

16

*Ellinger*, 223 Mont. at 355, 725 P.2d at 1204. Ellis similarly was not in custody. Ellis could have withdrawn from questioning at any time. The District Court correctly denied Ellis's motion to dismiss for an alleged violation of *Miranda*.

¶41 *Issue Four: Whether this Court can address Ellis's unpreserved claim that the results of his blood test were admitted without a sufficient foundation.*

¶42 Generally, the Court "does not consider arguments made for the first time on appeal." *State v. Homer*, 2014 MT 57, ¶ 12, 374 Mont. 157, 321 P.3d 77 (citing *State v. Lotter*, 2013 MT 336, ¶ 30, 372 Mont. 445, 313 P.3d 148). "[A] claimed error must have been preserved at the first-level appellate court in order for this Court to consider the issue." *State v. Akers*, 2017 MT 311, ¶ 20, 389 Mont. 531, 408 P.3d 142.

¶43 Ellis objected to admitting the toxicology report during the forensic toxicologist's testimony on grounds of foundation at his trial in Justice Court. Ellis argued that a chain of custody issue existed because the State did not call the phlebotomist who drew his blood to testify. The Justice Court overruled Ellis's objection because Trooper Becken observed the blood draw. Ellis did not appeal this issue to the District Court. The State asserts that Ellis waived his right to contest admitting the report by failing to appeal the issue to the District Court. "[F]ailure to raise an appealable issue, whether preserved in the trial court or not, on intermediate appeal from a lower court of record generally constitutes an implied waiver of the issue for ultimate appeal to this Court." *City of Bozeman v. McCarthy*, 2019 MT 209, ¶ 32, 397 Mont. 134, 447 P.3d 1048. We agree with the State that Ellis did not properly preserve the issue for appeal to this Court. Accordingly, this Court declines to address the issue.

17

¶44    *Issue Five: Whether there was sufficient evidence to convict Ellis of driving under the influence.*

¶45    To prove a defendant guilty of a DUI, the State must prove beyond a reasonable doubt that the defendant was in actual physical control of a vehicle on roads open to the public while under the influence of alcohol or any drug. § 61-8-1002(1)(a), MCA. DFE is considered a "drug" for purposes of a violation of § [61-8-1002(1)(a)], MCA. *State v. Pinder*, 2015 MT 157, ¶ 22, 379 Mont. 357, 350 P.3d 377.

¶46    Ellis continues to argue that he did not show any signs of impairment during the stop. Ellis further argues that the State's lab report did not show any level of DFE, resulting in the State failing to meet its burden of proof. The District Court did not address this issue, determining it to be duplicative. Though this Court will address this issue, Ellis's contentions are circularly fatal. The State argues, and this Court agrees, that the impairment was evidenced by Ellis passing out while driving after huffing the Dust-Off.

¶47    Ellis confirmed to officers that he was the driver of the Jeep that had crashed on Huffine Lane. Ellis also confirmed to officers that he huffed Dust-Off he purchased at the hardware store, while driving, and then passed out. The forensic toxicologist testified that DFE was detected in Ellis's blood sample. Though Ellis displayed a mediocre performance of the SFSTs, the Justice Court heard testimony that DFE is metabolized quicker than alcohol and that signs of impairment do not last as long as someone impaired by alcohol. Here, there was sufficient evidence to find Ellis guilty of DUI. All elements of DUI are satisfied.

**CONCLUSION**

¶48 The District Court correctly affirmed the Justice Court's denial of Ellis's motions to suppress. Further, this Court concludes there was sufficient evidence to convict Ellis of DUI. Ellis's conviction is affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ INGRID GUSTAFSON
/S/ BETH BAKER
/S/ JIM RICE