No. 88-196

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

THE DEPARTMENT OF REVENUE OF THE
STATE OF MONTANA,

        Petitioner and Respondent,

  -vs-

GALLATIN OUTPATIENT CLINIC, INC.,
INSURANCE COMPANY,

        Respondent and Appellant.

---

APPEAL FROM:  District Court of the Eighteenth Judicial District,
              In and for the County of Gallatin,
              The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Dorsey & Whitney; Stephen D. Bell, Billings, Montana

    For Respondent:

        Larry Schuster, Dept. of Revenue, Helena, Montana

---

Submitted on Briefs:  Aug. 26, 1988

Decided: November 1, 1988

Filed:

_Ethel M. Harrison_

Clerk

FILED '88 NOV 1 AM 10 46

CLERK MONTANA SUPREME COURT

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The District Court, Eighteenth Judicial District, Gallatin County, determined that Gallatin Outpatient Clinic, Inc. was not a "hospital," and therefore its personal property was not exempt from state taxation. In so holding the District Court reversed the decision of the State Tax Appeal Board (STAB) which had concluded that Gallatin Outpatient Clinic was a hospital within the personal property exemption statute, and that the personal property of the Gallatin Outpatient Clinic was being used for hospital purposes. The Outpatient Clinic has appealed the decision of the District Court to this Court. We affirm the District Court, holding that Gallatin Outpatient Clinic is not a "hospital" which would be entitled to a personal property tax exemption.

Gallatin Outpatient Clinic also known as Same Day Surgery Center (Clinic) filed an application for a property tax exemption with the property assessment division of the Montana Department of Revenue (Department). The exemption was denied on April 14, 1986. The Clinic appealed the Department's decision to the State Tax Appeal Board.

On May 22, 1986, the Gallatin County Treasurer assessed the Clinic $11,299.54 as taxes on the Clinic's personal property. The Clinic paid the sum to the Gallatin County Treasurer under protest.

In the contested proceedings before STAB, after a hearing and a tour of Gallatin Outpatient Clinic by members of STAB, that agency made findings of fact and conclusions of law. It found that the Clinic was a corporation organized under the laws of the state of Montana and that its primary

business was to provide outpatient surgical services and nonsurgical procedures to patients in the Bozeman, Montana area. It was licensed by the Montana Department of Health and Environmental Sciences.

STAB further found that the purpose of the Clinic was to lower medical costs and provide high quality medical services for patients whose surgeries did not require an overnight stay. It found the physical facilities of the Clinic were essentially identical to those found in any outpatient surgery area in any hospital. It also determined that the personal property which was the subject of the appeal before STAB included anesthesia equipment, oxygen and carbon dioxide equipment, a "crash cart" available to resuscitate patients, suction machines, eye surgery laser, gurneys, sterilization equipment for surgical instruments, special surgical lighting, and other property used for surgical and medical procedures. It determined that the same kind of equipment would be found in the outpatient surgical area of any hospital. The Clinic's nonsurgical procedures included chemotherapy, transfusions and dialysis. STAB further found that the Clinic's only source of income was its billings to patients and that if its tax-exemption were denied, the Clinic would have to increase patient charges.

Thereupon, STAB made a conclusion of law that Gallatin Outpatient Clinic was a "hospital" within the meaning of § 15-6-201(1)(c), MCA; that the use of the personal property by the Clinic fell within the purpose of exempting personal property for hospitals; and that therefore the personal property of the Clinic was exempt from taxation under Montana law.

The Department of Revenue appealed the decision of STAB to the District Court. In mixed findings of fact and conclusions of law, the District Court determined:

Section 15-6-201(1)(c), MCA, exempts from taxation property used exclusively for hospitals. The 1987 legislature substituted "non-profit health care facilities for hospitals." The record clearly establishes that respondent does not operate a hospital. While it may perform minor surgeries, it did not have x-ray, laboratory, rehabilitation, major surgery, in-patient, obstetrical, pharmacological, blood banking, full time nursing staff, or emergency room facilities. As the name implies, the facilities in question are for minor "same-day" surgeries.

. . .

Clearly, the Same Day Surgery Center is a profit enterprise, not a hospital. It is closer to a doctor's office than to a full-service hospital. We do not permit doctors to exempt their own equipment, even though it is used in a hospital-like fashion. I do not believe that the legislature intended to apply the exemption for a mutually owned service facility.

Thereupon, the court entered its order reversing the decision of STAB and directed that taxes be levied against the personal property for the years 1986 and 1987.

On appeal to this Court, the Clinic propounds these issues: (1) Does substantial credible evidence support STAB's finding that the Clinic's property was used exclusively for hospital purposes? 2) Did STAB correctly hold that the definition of "hospital" in § 50-5-101(23), MCA, (1985) does not control whether the Clinic is a hospital for the purposes of tax exemption? (3) Did STAB correctly focus on how the personal property was used and the legislative intent with respect to that use? and (4) Does the surgery center have to be a non-profit organization to qualify for the tax exemption?

In response on appeal, the Department of Revenue contends that the District Court properly reversed STAB under the applicable law; that the Clinic is not a hospital and so

- 4 -

not entitled to the personal property tax exemption; and that the legislative intent with respect to tax exemptions did not include property used by outpatient clinics.

The District Court correctly divined that the principal issue came down to whether the personal property must be used in a hospital to be exempt, or merely be put to use for hospital-like purposes, as the Clinic urged. We hold that under the applicable statutes, only hospitals are entitled to the property tax-exemption, and that the Clinic is not a hospital.

The statute in effect at the time is clear and brooks no argument:

> Section 15-6-201. Exempt categories. (1) The following categories are exempt from taxation:
>
> . . .
>
> (c) Property used exclusively for agricultural and horticultural societies, for educational purposes, and for hospitals. (Emphasis supplied.)

In Montana Deaconess Hospital v. Cascade County (1974), 164 Mont. 256, 260, 521 P.2d 203, 205 in construing a nearly identical statute, this Court adhered to the well accepted principle of statutory construction that the function of this Court is to interpret the intention of the legislature, if at all possible, from the plain meaning of the words used, and if the meaning of the statute can be determined from the language used, this Court is not at liberty to add or detract language from the statute in question. The property tax-exemption in this case applies only to property used "for hospitals." The statute does not apply to property used "for hospital purposes." The careful wording of the statute to limit the exemption to property used "for hospitals" excludes the exemption for personal property owned by entities which are not hospitals, even though the personal property may have

been used for hospital purposes. Unless, therefore, the entity is a "hospital", its personal property is not entitled to the exemption.

In the proceedings before it, STAB recognized that the entity must be a "hospital". It made a specific conclusion of law that the Clinic was a hospital within the meaning of § 15-6-201(1)(c), MCA. That conclusion of law is a determination of a legal question, which when reviewed by a court is subject to a broader scope of review than are findings of fact made by an administrative agency. City of Billings v. Billings Firefighters (1982), 651 P.2d 627, 200 Mont. 421. The expertise of courts in determining legal questions supersedes the deference owed to administrative determinations.

We have statutes which were in effect at the time and which define various health care facilities. Both a hospital and an outpatient facility were "health care facilities." Section 50-5-101(18), MCA, (1985). An outpatient facility was defined as follows:

> "Outpatient facility" means a facility, located in or apart from a hospital, providing, under the direction of a licensed physician, either diagnosis or treatment, or both, to ambulatory patients in need of medical, surgical, or mental care. An outpatient facility may have observation beds. (Emphasis supplied.)

Section 15-5-101(33), MCA.

On the other hand, our statutes defined a hospital as follows:

> "Hospital" means a facility providing, by or under the supervision of licensed physicians, services for medical diagnosis, treatment, rehabilitation, and care of injured, disabled, or sick persons. Services provided may or may not include obstetrical care, emergency care, or any other service as allowed by state licensing authority. A hospital has an organized medical staff which is on

- 6 -

call and available within 20 minutes, 24 hours per
day, 7 days per week, and provides 24-hour nursing
care by licensed registered nurses. This term
includes hospitals specializing in providing health
services for psychiatric, mentally retarded, and
tubercular patients.

Section 50-5-101(23), MCA.

As STAB determined, the Clinic in this case was licensed
by the Department of Health and Environmental Sciences. Its
license must have been acquired under § 50-5-201, MCA. It
could be licensed as a health care facility only as an
outpatient facility under the definitions above set out.

STAB was not deterred by the obvious definitional
differences between a hospital and an outpatient facility
under the statutes. It concluded that the definition of
"hospital" in § 50-5-101, MCA, was applicable to only parts 1
through 4 in Chapter 5 of Title 50, relying on the first
sentence of that statute which said "as used in parts 1
through 4 of this chapter, unless the context clearly
indicates otherwise, the following definitions apply." Here
STAB incorrectly limited the application of the definitions
for hospital and outpatient facilities. However, § 1-2-107,
MCA, provided then and still provides that whenever the
meaning of a word or phrase is defined in any part of our
code, that definition is applicable to the same word or
phrase wherever it occurs, except where a contrary intention
plainly appears. The use by the legislature in § 50-5-101,
MCA, of the phrase "as used in parts 1 through 4 of this
chapter" does not show the legislature's plain intent that
the definitions were only to be applied in those parts of the
code. Those words only indicate that the legislature
intended the particular application of the definitions in
those parts of the code, without limitation to the general

use of the definitions in other parts of the code, pursuant to § 1-2-107, MCA.

The tax-exemption was limited to property used "for hospitals." The outpatient clinic here is not a hospital. Therefore we affirm the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

- 8 -