FILED

01/13/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0265

DA 25-0265

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 3

ESTATE OF TERRY ATHY; ALEX ATHY,
INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
TERRY ATHY,

      Plaintiffs and Appellants,

  v.

EVI KALISPELL, LLC; EDGEWOOD
KALISPELL SENIOR LIVING, LLC;
EDGEWOOD KALISPELL MEMORY
CARE; EDGEWOOD VISTA KALISPELL;
EDGEWOOD REIT, INC.; EDGEWOOD
OPERATIONS, INC.; EDGEWOOD OPCO,
LLC.; EDGEWOOD HEALTHCARE;
EDGEWOOD PROPERTIES
MANAGEMENT, LLC; EDGEWOOD
PROPERTIES, L.L.C.; EDGEWOOD
PROPERTIES, LLLP; EDGEWOOD
REAL ESTATE INVESTMENT TRUST;
JOHN DOES 1-10; and DOE BUSINESS
ENTITIES X, Y, AND Z,

      Defendants and Appellees.

APPEAL FROM:   District Court of the Eleventh Judicial District,
                 In and For the County of Flathead, Cause No. DV-2023-1359(C)
                 Honorable Heidi J. Ulbricht, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

          Darin K. Westover, Glacier Law Firm, PLLC, Kalispell, Montana

For Appellees:

Sean Goicoechea, Katrina L. Feller, Moore, Cockrell, Goicoechea & Johnson, P.C., Kalispell, Montana

Submitted on Briefs:  October 29, 2025

Decided:  January 13, 2026

Filed:

_____
Clerk

2

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1 Alex Athy (Athy), on behalf of himself and as personal representative for the estate of his mother, Terry Athy (Terry), appeals the March 2025 order of the Montana Eleventh Judicial District Court, Flathead County, dismissing his civil claims against Edgewood Kalispell Memory Care, et al., (Defendants) with prejudice. We restate the issues on appeal as follows:

1. *Did the District Court correctly construe Athy's claims as medical malpractice claims subject to §§ 27-2-205(1) and 25-3-106, MCA, time limits and service of process requirements?*

2. *Did the District Court correctly dismiss Athy's medical malpractice claims as time-barred by § 27-2-205(1), MCA?*

¶2 We hold that Counts I-VI of Athy's "First Amended Complaint" (FAC) were medical malpractice claims subject to §§ 27-2-205(1) and 25-3-106, MCA, time limits and service of process requirements and that the court correctly dismissed those counts as time-barred. However, we hold that Athy's unjust enrichment and contract rescission claims were not medical malpractice claims and not subject to §§ 27-2-205(1) or 25-3-106, MCA. Therefore, the District Court incorrectly dismissed Counts VII and VIII as untimely under § 27-2-205(1), MCA. Accordingly, we affirm in part, reverse in part, and remand for further proceedings only on Athy's unjust enrichment and contract rescission claims.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Terry, who had dementia, became a resident of the Edgewood Kalispell Memory Care facility (Edgewood) in June 2021. After suffering complications from infection, Terry passed away on November 23, 2021. Just shy of two years later, on November 20,

3

2023, Athy, individually and as personal representative for his mother's estate, filed a complaint against Edgewood and others[1] alleging claims of wrongful death (Count I), survival action (Count II), negligence (Count III), and negligent and/or intentional infliction of emotional distress (Count IV) and seeking compensatory and special damages. Athy alleged, among other things, that Edgewood and its staff of "certified, licensed, and registered" nurses and nurse's assistants "deviated from the acceptable standard of care for a long-term memory care facility" and that their negligence caused serious illness and injuries and, ultimately, Terry's death. Athy did not serve the complaint or summons on any defendant.

¶4    Almost a year later, on November 13, 2024, Athy filed a "First Amended Complaint" against Defendants[2] alleging claims of wrongful death (Count I), survival action (Count II), negligence (Count III), negligent infliction of emotional distress (Count IV), intentional infliction of emotional distress (Count V), elder abuse (Count VI), unjust enrichment (Count VII), and rescission of contract (Count VIII). Athy alleged that Terry was taken to the hospital in late October 2021 for treatment of abdominal pain, blood in her stool, incontinence, and a large, soiled rash. Athy alleged that Terry was in a soiled diaper for days or weeks prior to hospitalization and that she died shortly after from infections and complications.

---

[1] In his November 20, 2023 complaint, Athy named Edgewood Kalispell Memory Care, Edgewood Healthcare, John Does 1-10, and Corporations X, Y, and Z as defendants.

[2] This time, Athy named ten more entity defendants in addition to the original defendants, Edgewood Kalispell Memory Care and Edgewood Healthcare. He again named John Does 1-10, but substituted Corporations X, Y, and Z for Doe Business Entities X, Y, and Z.

¶5	As the basis for Counts I-VI, Athy alleged that, at the time of her injuries, Terry was in the "custody, control, and care" of Defendants, who had a "duty to exercise reasonable care commensurate with the level of skill, knowledge, and experience of a memory care facility."[3]  Defendants breached the applicable duty of care by failing to (1) check for, identify, document, and treat Terry's wounds; (2) obtain more medications for her wounds when out of stock; (3) timely transport her to the hospital or seek further medical treatment for her wounds; (4) supervise and train facility staff; (5) create and maintain documentation of "patient care"; and (6) provide services necessary to maintain Terry's physical and mental health.  As a result, Terry suffered emotional harm and serious physical illness and injury, leading to her death.  Athy also suffered emotional injury.  As the basis for Counts VII and VIII, Athy alleged that Defendants were unjustly enriched by payments received for care they failed to render and misrepresented the level of care they would provide Terry at the Edgewood facility.  Athy sought compensatory and special damages and contract rescission.  Athy did not serve the FAC or amended summons on any defendant.

¶6	On December 9, 2024, Defendants filed a motion to dismiss[4] with prejudice because (1) Athy's claims were medical malpractice claims subject to §§ 27-2-205(1) and 25-3-106, MCA, time limits and service requirements; (2) he failed to serve the original complaint

---

[3] Unlike the November 20, 2023 complaint, the FAC did not refer to Edgewood as a "long-term memory care facility" or to its staff as "certified, licensed, and registered" nurses and nurse's assistants, rather, just as "staff."

[4] Defendants' motion was based on M. R. Civ. P. 8(c)(1) (statute of limitations) and 12(b)(5)-(6) (insufficient service of process and failure to state a claim upon which relief can be granted).

within six months of filing as required by § 25-3-106, MCA; and (3) the FAC was filed beyond the two-year statute of limitations and thus time-barred by § 27-2-205(1), MCA.[5]

¶7 Athy opposed dismissal on the grounds that (1) none of the FAC claims were medical malpractice claims and therefore §§ 27-2-205(1) and 25-3-106, MCA, did not apply but, even if they did, (2) filing the original complaint tolled the statute of limitations and (3) the FAC "related back" to the timely-filed original complaint under M. R. Civ. P. 15(c) and was therefore not time-barred.

¶8 The District Court concluded all Athy's claims were medical malpractice claims subject to §§ 27-2-205(1) and 25-3-106, MCA. The court further concluded that, under *Estate of Phillips v. Robbins*, 2024 MT 174, 417 Mont. 431, 554 P.3d 145, (1) failure to serve the original complaint required dismissal, leaving the matter "as if the suit had never been brought"; and (2) the FAC was time-barred and tolling and relation-back principles did not apply. Athy timely appeals.

**STANDARD OF REVIEW**

¶9 We review a lower court's decision on a motion to dismiss de novo. *Estate of Phillips*, ¶ 6. A motion to dismiss under M. R. Civ. P. 12(b) effectively admits all well-pleaded allegations in the complaint; therefore, we construe the complaint in the light most favorable to the plaintiff taking all factual allegations as true. *Puryer v. HSBC Bank USA, N.A.*, 2018 MT 124, ¶ 10, 391 Mont. 361, 419 P.3d 105. The interpretation and

---

[5] Defendants also asserted that the FAC should be dismissed for failure to state a claim against many of the newly-named defendants. The District Court did not grant dismissal on these grounds, and neither party raises this issue on appeal.

application of statutes, including statutes of limitation, present questions of law reviewed de novo for correctness. *Estate of Phillips*, ¶ 6. When the complaint on its face establishes that the claim is barred by the statute of limitations, we will uphold a district court's dismissal on those grounds. *Selensky-Foust v. Mercer*, 2022 MT 97, ¶ 7, 408 Mont. 488, 510 P.3d 78.

¶10 Whether tolling or relation-back principles apply are questions of law reviewed de novo with underlying factual determinations reviewed for clear error. *Estate of Phillips*, ¶ 6; *Cremer Rodeo Land & Livestock Co. v. McMullen*, 2023 MT 117, ¶¶ 13, 29, 412 Mont. 471, 531 P.3d 566.

¶11 Finally, canons of statutory construction require us to interpret statutes according to their plain language and holistically to avoid absurd results. *City of Missoula v. Fox*, 2019 MT 250, ¶ 18, 397 Mont. 388, 450 P.3d 898.

## DISCUSSION

¶12 Athy contends the District Court erroneously dismissed the FAC for numerous reasons. First, he says the court misconstrued his claims as medical malpractice claims subject to §§ 27-2-205(1) and 25-3-106, MCA, time limits and service requirements. He says, at the very least, his unjust enrichment and contract rescission claims (Counts VII and VIII) are not medical malpractice claims. As for his care-based claims (Counts I-VI), Athy contends they cannot be subject to §§ 27-2-205(1) and 25-3-106, MCA, because (1) they were not "malpractice claims" under the Montana Medical Legal Panel Act

7

(MMLPA); and (2) there was no basis in the FAC to characterize Edgewood as a "long-term care facility" under § 27-2-205(1), MCA.

¶13　Second, Athy argues in the alternative that, even if his care-based claims are medical malpractice claims, they were nevertheless not time-barred because (1) the § 27-2-205(1) statute of limitations was tolled upon filing of the original complaint under *Webb v. T.D.*, 275 Mont. 243, 912 P.2d 202 (1996); and (2) the FAC "relates back" to the timely-filed original complaint under M. R. Civ. P. 15(c) and was therefore also timely.[6]　We address Athy's arguments in turn.

¶14　　*1. Did the District Court correctly construe Athy's claims as medical malpractice claims subject to §§ 27-2-205(1) and 25-3-106, MCA, time limits and service of process requirements?*

¶15　"In the taxonomy of civil actions, a medical malpractice action is a species of negligence action."　*Camen v. Glacier Eye Clinic, P.C.*, 2023 MT 174, ¶ 27, 413 Mont. 277, 539 P.3d 1062 (citation omitted).　Specifically, "[m]edical malpractice is a particular species of professional negligence applicable to health care providers."　*Kipfinger v. Great Falls Obstetrical & Gynecological Assocs.*, 2023 MT 44, ¶ 17, 411 Mont. 269, 525 P.3d 1183.　Like any negligence claim, the elements of medical malpractice are the existence of a duty, breach of that duty, causation of harm, and resulting damages.　*Kipfinger*, ¶ 16; *Labair v. Carey*, 2012 MT 312, ¶ 29, 367 Mont. 453, 291 P.3d 1160.　However, unlike ordinary negligence, where the standard of care is that of a reasonable person, medical

---

[6] Athy forwards other arguments, but they are not persuasive.　For example, he says the court impermissibly relied on information outside the FAC but then concedes "it would be permissible to look outside" the FAC to analyze his claims.

negligence involves the standard of care and conduct applicable to a medical professional, which is generally beyond the common understanding of lay people and thus requires expert testimony. *Selensky-Foust*, ¶ 10; *Kipfinger*, ¶¶ 17-18, 20 (duty, breach, and causation elements of medical malpractice usually require expert testimony).

### A. Sections 27-2-205(1) and 25-3-106, MCA, and the MMLPA

¶16     The MMLPA (Title 27, chapter 6, MCA) was enacted "to prevent where possible the filing in court of actions against health care providers and their employees for professional liability in situations where the facts do not permit at least a reasonable inference of malpractice[.]" Section 27-6-102, MCA.[7]  The Act is meant to screen certain professional negligence—i.e., malpractice—claims by subjecting them to panel review prior to initiation of a district court action. Sections 27-6-105, -301, -701, MCA. A panel formed pursuant to §§ 27-6-401 through -404, MCA, "shall review all malpractice claims or potential claims against health care providers covered by [the Act]." Section § 27-6-105, MCA.

¶17     The MMLPA instructs that "[n]o malpractice claim may be filed in any court against a health care provider before an application is made to the panel and its decision is rendered." Section 27-6-701, MCA. At first blush, this section appears to foreclose initiating *any* malpractice claim against *any* healthcare provider in district court that has

---

[7] *Accord Linder v. Smith*, 193 Mont. 20, 26, 629 P.2d 1187, 1190 (1981) ("the articulated basis for the panel acts has been the malpractice crisis existing in many states, with this legislation intended as a means to limit malpractice filings to those which are clearly meritorious").

not been previously reviewed under the MMLPA.[8]  However, both "malpractice claim" and "health care provider" are defined terms in the Act and therefore we must construe the Act according to their technical meaning.  Section 1-2-106, MCA (words and phrases used in statutes are to be given their ordinary meaning "but technical words and phrases and such others as have acquired a peculiar and appropriate meaning in law . . . are to be construed according to such peculiar and appropriate meaning or definition"); *Northwestern Corp. v. Mont. Dep't of Pub. Serv. Regulation*, 2016 MT 239, ¶ 33, 385 Mont. 33, 380 P.3d 787 (we resort to ordinary meaning in the "absen[ce of] statutory definitions").

¶18     A "malpractice claim," as defined by § 27-6-103(5), MCA, means "a claim or potential claim of a claimant against a health care provider for medical or dental treatment, lack of medical or dental treatment, or other alleged departure from accepted standards of health care that proximately results in damage to the claimant."[9]  A "health care provider," as defined by § 27-6-103(3), MCA, means "a physician, a dentist, a podiatrist, or a health care facility."  The Act separately defines "physician," "dentist," "podiatrist," and, as pertinent here, "health care facility"—which means "a facility licensed as a health care facility under Title 50, chapter 5."  Section 27-6-103(1), (2)(a), (3), (7), (8), MCA.  But

---

[8] Accordingly, we have said that MMLPA review is a jurisdictional "condition precedent to commencing a medical malpractice action."  *Pickett v. Cortese*, 2014 MT 166, ¶ 17, 375 Mont. 320, 328 P.3d 660 (court had jurisdiction because plaintiff's claims against doctor submitted to panel for pre-filing review sufficiently encompassed her claims presented later in district court); *accord Selensky-Foust*, ¶ 4 n.3 ("the claimant must complete the [MMLPA] administrative process before pursuing a medical malpractice claim in district court").

[9] The defined term is a "malpractice claim," not a *medical* malpractice claim.

"for the purposes of" the Act, the term does not include, as pertinent, a "residential care facility." Section 27-6-103(2)(b)(iii), MCA. The MMLPA does not define "residential care facility."

¶19 According to its express terms, the MMLPA subjects certain professional negligence claims against a defined class of professionals to pre-filing claim review. Notwithstanding, panel decisions on review are "without administrative or judicial authority and [are] not binding upon any party." Sections 27-6-602, -606(1), -704, MCA. Instead, "the only effect of the panel's decision on a plaintiff's case would be to discourage him from taking his claim to court"; "the claimant is not bound by the decision of the panel . . . nor is the decision admissible in a subsequent judicial action." *Linder v. Smith*, 193 Mont. 20, 22, 29, 629 P.2d 1187, 1187-88, 1192 (1990).[10]

¶20 Separate from the MMLPA, Title 27, chapter 2, MCA, governs statutes of limitations in civil actions. Section 27-2-205(1), MCA ("actions for medical malpractice"), provides that

> an "[a]ction in tort or contract for injury or death against" various professionals and professional entities—including a licensed "long-term care facility"—"based upon alleged professional negligence or for rendering professional services without consent or for an act, error, or omission, must . . . be commenced within 2 years after the date of injury or within 2 years after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs last."

---

[10] See also Title 27, chapter 12, MCA, the Montana Chiropractic Legal Panel Act, which is almost identical to the MMLPA, except it governs pre-filing review of any "malpractice claim" against a "chiropractic physician" and, notably, does not have any section comparable to § 27-6-701, MCA (requiring MMLPA pre-filing review of any "malpractice claim" against a "health care provider" prior to district court action). *See also* § 27-2-205(1), MCA, listing a "chiropractor" among the professional defendants protected by the shortened two-year statute of limitations.

*Compare* §§ 27-2-102, -105, -204, MCA (statute of limitations for tort claims is generally three years). Section 27-2-205(1), MCA, does not define a "long-term care facility."

¶21　Finally, Title 25, chapter 3, MCA, governs service of process in civil actions. "The nature of service is twofold: it serves notice to a party that litigation is pending, and it vests a court with jurisdiction." *Fonk v. Ulsher*, 360 Mont. 379, 383-84, 860 P.2d 145, 147 (1993). The plaintiff has the burden to timely effect proper service of the complaint and summons upon an adverse party—"mere knowledge of the action is not a substitute for valid service." *Nolan v. Riverstone Health Care*, 2017 MT 63, ¶¶ 10-12, 387 Mont. 97, 391 P.3d 95 (citing *Fonk*); *accord La Forest v. Texaco*, 179 Mont. 42, 47, 585 P.2d 1318, 1321 (1978) (notice of the existence of a claim is not notice of the commencement of a lawsuit). Rather, "strict compliance with the rules for service of process is mandatory." *Nolan*, ¶ 12; *accord Fonk*, 260 Mont. at 383-84, 860 P.2d at 147 ("service of process rule[s] are mandatory . . . even where a defendant has actual notice of the summons and complaint").

¶22　Under the Rules of Civil Procedure, if a plaintiff fails to accomplish service of process within three years of filing the complaint, the complaint is subject to summary dismissal with prejudice for failure to prosecute the action. *Nolan*, ¶¶ 10-12 (citing M. R. Civ. P. 4 and 41).[11] By contrast, § 25-3-106, MCA, specifically provides that:

> A plaintiff in a medical malpractice action shall accomplish service within
> 6 months after filing the complaint. If the plaintiff fails to do so, the court,

_____

[11] *But see* § 25-3-107, MCA (2023 Mont. Laws ch. 263, § 1) ("a plaintiff shall make service of process no later than 2 years after filing the complaint").

12

> on motion or on its own initiative, shall dismiss the action without prejudice unless the defendant has made an appearance.[12],[13]

In short, § 25-3-106, MCA, subjects a malpractice claim to summary dismissal without prejudice if not served within six months of filing.

¶23 Here, taking the FAC allegations as true, Edgewood is "both an assisted living facility and an adult day care center." The MMLPA defines a "health care provider" as a "health care facility" licensed as such under Title 50, chapter 5, MCA. Section 27-6-103(3), (2)(a), MCA. While "adult day care center" and "assisted living facility" are separately defined in § 50-5-101, MCA, they are also both included in the definition for a "residential care facility," which is expressly *excluded* from the MMLPA definition of a "health care provider." *Compare* §§ 50-5-101(46), (3), (6), and 27-6-103(2)(b)(iii), MCA. Accordingly, neither facility type is a "health care provider" subject to pre-filing claim review and the MMLPA is wholly inapplicable to this case. Sections 27-6-103(2), (3), (5), -105, -701, MCA. Athy conceded as much, stating his claims were "not applicable to be heard" before a MMLPA review panel. The MMLPA governs pre-filing review of certain claims for professional negligence against certain defendants; the Act does not define or limit the common-law tort of medical malpractice or its contours.

---

[12] The Legislature enacted § 25-3-106, MCA, at the same time it changed the statute of limitations for "actions in medical malpractice" from three to two years under § 27-2-205(1), MCA. *See* 2015 Mont. Laws ch. 368, §§ 19, 21.

[13] In *Estate of Phillips*, ¶ 18, we said that the statute clearly contemplates that "unless the defendant has made an appearance" "applies when a defendant's appearance precedes the defendant's motion to dismiss."

¶24 Contrary to Athy's assertions, it does not follow that §§ 27-2-205(1) and 25-3-106, MCA, time limits and service requirements apply only to "malpractice claims" subject to MMLPA pre-filing review, given the express language of those statutes. That would essentially mean a medical malpractice claim cannot exist outside MMLPA pre-filing review. First, as discussed, the MMLPA applies only to a defined class of "health care providers." Second, § 27-2-205(1), MCA, lists *numerous* professionals subject to "actions for medical malpractice"—e.g., clinical lab techs, pharmacists, veterinarians, dental hygienists, and nurses—who do not fall within the MMLPA definition of "health care providers." Section 27-6-103(3), MCA ("health care provider" specifically defined as "a physician, a dentist, a podiatrist, or a health care facility"). It cannot be said that these professionals are immune from medical malpractice liability simply because the MMLPA does not require pre-filing review of claims against them. Reading the statutes this way would produce an absurd result.[14] Instead, by its express terms, the MMLPA provides for pre-filing review of malpractice claims against a certain class of defendants; the Act does not limit medical malpractice actions to only those claims subject to pre-filing review.[15]

---

[14] *See also Clark Fork Coalition v. Mont. Dep't of Natural Res. & Conservation*, 2021 MT 44, ¶ 60, 403 Mont. 225, 481 P.3d 198 ("the Legislature is presumed to be aware of all of its enactments"). Section 27-2-205(1), MCA, was enacted in 1971, pre-dating the 1977 MMLPA.

[15] Athy cites *Selensky-Foust*, ¶ 10, for the proposition that "a claim that is not subject to MMLP process is not subject to [the two-year] limitations period." *Selensky-Foust* says no such thing. Further, that case dealt with a medical malpractice claim against a hospital—i.e., a claim against a "health care provider" subject to MMLPA pre-filing review—unlike the malpractice claims at issue here. Athy also cites a federal district court opinion for the same proposition, *Arneson v. Mich. Tissue Bank*, No. CV 05-189-M-JCL, 2007 U.S. Dist. LEXIS 95917 (D. Mont. Mar. 26, 2007). *Arneson* is not precedential and does not control our interpretation of the pertinent statutes here. And, unlike the Defendants here, the defendants in *Arneson* (a bone tissue bank) did not

14

¶25 Conversely and as pertinent here, §§ 27-2-205(1) and 25-3-106, MCA, apply to any "actions for medical malpractice" against "a licensed hospital or long-term care facility." Section 27-2-205(1), MCA does not define a "long-term care facility." But, where a word or phrase in a statute is undefined, we may look to other statutes where the same word or phrase is defined and use that definition unless a contrary intention plainly appears. Section 1-2-107, MCA; *State v. Pinder*, 2015 MT 157, ¶¶ 14-18, 379 Mont. 357, 350 P.3d 377 (discussing our various approaches to prefatory statutory language indicating how statutory definitions are to be used).

¶26 Title 50, chapter 5, parts 1 through 3, MCA, govern licensing of "hospitals and related facilities" and provide many definitions, as used in those parts, including a definition for "long-term care facility." The prefatory language to § 50-5-101, MCA,[16] is nearly identical to prefatory language we said gave "no clear indication" the definitions in that section could not be "referenced for issues arising" in other contexts in *Judicial Stds. Comm'n v. Not Afraid*, 2010 MT 285, ¶ 20, 358 Mont. 532, 245 P.3d 1116. Moreover, *Dep't of Revenue v. Gallatin Outpatient Clinic*, 234 Mont. 425, 763 P.2d 1128 (1998), expressly authorizes using definitions found in § 50-5-101, MCA, in contexts outside of

_____

provide medical treatment to the plaintiff—instead, they supplied bone allograft tissue to the plaintiff's dentist, who used the tissue in implant surgery. Contrary to Athy's assertion, the *Arneson* court did not "refuse[] to apply the malpractice statute of limitations precisely because the claims fell outside the MMLP statutes."

[16] "As used in parts 1 through 3 of this chapter, unless the context clearly indicates otherwise, the following definitions apply."

15

Title 50, chapter 5.[17]  Therefore, pursuant to § 1-2-107, MCA, and absent any clear contrary intent, the definition of a "long-term care facility" as it appears in § 50-5-101(31), MCA, is the same definition for the term as used in § 27-2-205(1), MCA.

¶27     Section 50-5-101(31), MCA, defines a "long-term care facility" as "a facility or part of a facility that provides skilled nursing care, residential care, intermediate nursing care, or intermediate developmental disability care to a total of two or more individuals or that provides personal care."  "Personal care" includes "the provision of services and care for residents who need some assistance in performing the activities of daily living." Section 50-5-101(41), MCA.  "Activities of daily living" include "tasks usually performed in the course of a normal day in a resident's life that include eating, walking, mobility, dressing, grooming, bathing, toileting, and transferring."  Section 50-5-101(2), MCA. While the statute does not separately define "residential care" as it appears in § 50-5-101(31), it defines a "residential care facility" as "an assisted living facility," which means "a congregate[18] residential setting that provides or coordinates personal care, 24-hour supervision and assistance, both scheduled and unscheduled, and activities and health-related services."  Section 50-5-101(46), (6), MCA.  Read together, these statutes

---

[17] There, we applied the § 50-5-101, MCA, definition of "hospital" to property tax exemption statutes under Title 15, chapter 6, part 2, MCA, because the prefatory language to the definitions section "only indicate[d] that the legislature intended the particular application of the definitions in those parts of the code, without limitation to the general use of the definitions in other parts of the code, pursuant to Section 1-2-107, MCA."  *Gallatin Outpatient Clinic*, 234 Mont. at 429-30, 763 P.2d at 1130-31.

[18] "Congregate" means "the provision of group services designed especially for elderly or disabled persons who require supportive services and housing."  Section 50-5-101(12), MCA.

establish that a "long-term care facility" is one that provides residents long-term personal care, health care, or both.

¶28 Here, Athy claimed that Edgewood was responsible for Terry's "long-term" residential "care and treatment," including "bathing, observations, toileting, feeding, medicating, bed sore prevention and treatment." It is apparent on the face of the well-pleaded allegations of the FAC that Edgewood provided Terry long-term personal care and, to some extent, health care, including medicating and wound care. This conclusion is a legal characterization drawn solely from the allegations, not a factual finding. At the Rule 12(b)(6) stage, we accept as true Athy's allegations describing the nature of the services provided and determine, as a matter of law, whether those alleged services fall within the statutory term "long-term care facility" as used in § 27-2-205(1), MCA. In construing that undefined statutory term, we reference definitions in Title 50, chapter 5, MCA, solely as an aid to statutory interpretation. We do not rely on extrinsic evidence, resolve disputed facts, or make findings beyond the face of the FAC.

¶29 Accordingly, we hold that, as alleged in the FAC, Edgewood qualifies as a "long-term care facility" for purposes of § 27-2-205(1), MCA. Therefore, any of Athy's claims based on medical malpractice were subject to a two-year statute of limitations under § 27-2-205(1), MCA, and a six-month service of process deadline under § 25-3-106, MCA.

**B. Some But Not All of Athy's Claims Were Medical Malpractice Claims**

¶30 The question remains, then, whether Athy's claims were medical malpractice claims and thus subject to §§ 27-2-205(1) and 25-3-106, MCA. To answer that question, we look

17

"to the gravamen of the action rather than relying on the label given to the claim by the plaintiff." *Tin Cup Cnty. Water v. Garden City Plumbing & Heating, Inc.*, 2008 MT 434, ¶ 25, 347 Mont. 468, 200 P.3d 60; *Saucier v. McDonald's Rests. of Mont., Inc.*, 2008 MT 63, ¶ 56, 342 Mont. 29, 179 P.3d 481 (we look to the nature of the acts alleged, not the manner in which the complaint is framed, to determine the gravamen of the complaint). The gravamen of a claim controls the limitations period applied to that claim. *Erickson v. Croft*, 233 Mont. 146, 153, 760 P.2d 706, 710 (1988). "A plaintiff cannot change the gravamen of the action to secure a longer period of limitations simply by virtue of mislabeling a claim for relief." *Tin Cup*, ¶ 26; *Saucier*, ¶ 56 (the gravamen test accounts for a litigant's misuse of terminology to "improperly re-characteriz[e]" a claim).

¶31    Medical negligence claims arise out of a health care provider's duty to provide health care services. *Selensky-Foust*, ¶¶ 8-13 (plaintiff's claim that he "did not receive the medical treatment necessary under prevailing professional standards" was "medical in nature" because "premised upon the care he received or failed to receive"); *accord Bryant v. Oakpointe Villa Nursing Ctr., Inc.*, 684 N.W.2d 864, 870-77 (Mich. 2004) (medical malpractice claims arise out of a "professional relationship" and the exercise of "medical judgment"). Compared to ordinary negligence claims, "[a]llegations of breach of duty involving medical judgment, diagnosis, or treatment indicate that a claim is for medical malpractice." *Szymborski v. Spring Mt. Treatment Ctr.*, 403 P.3d 1280, 1284-88 (Nev. 2017); *Ditch v. Waynesboro Hosp.*, 917 A.2d 317, 321-22 (Pa. Sup. Ct. 2007) ("where a complaint . . . involves diagnosis, care and treatment by licensed professionals,

the action must be characterized as a professional negligence action" (citation omitted));

*accord Selensky-Foust*, ¶¶ 8-13. Questions of medical judgment, diagnosis, or treatment require expert testimony regarding the applicable professional medical standard of care and departure therefrom. *Selensky-Foust*, ¶ 10.[19]

¶32 Here, the FAC alleged that Terry contracted with Defendants for professional long-term memory care services and that, at the time of Terry's injuries and death, she was in Defendants' "custody, control, and care." *See Bryant*, 684 N.W.2d at 871 (a professional relationship sufficient to support medical malpractice claims existed where defendants were "subject to a contractual duty that required [them] to render professional health care services to the plaintiff"). Taking these allegations as true, Defendants had a professional relationship with Terry. The FAC also identified the nature of Defendants' professional duty—it was a "duty to exercise reasonable care commensurate with the level of skill, knowledge, and experience of a memory care facility." Finally, the FAC alleged that Defendants breached their duty of care by failing to (1) check for, identify, document, and treat Terry's wounds; (2) obtain more medications for her wounds when out of stock; (3) timely transport her to the hospital or seek further medical treatment for her wounds; (4) supervise and train facility staff; (5) create and maintain documentation of patient care; and (6) provide services necessary to maintain Terry's physical and mental health. These

---

[19] Expert witness testimony on the standard of care, breach, or causation is required except in rare cases where "the conduct complained of is readily ascertainable by a layman." *Montana Deaconess Hosp. v. Gratton*, 169 Mont. 185, 189, 545 P.2d 670, 672 (1976) (expert testimony required where "[t]he cause of an infection [was] not readily ascertainable by a layman").

failures, according to the FAC, "resulted in infections and complications that caused [Terry's] death" and other personal injuries.

¶33     Athy's care-based claims were unquestionably grounded in personal and health-care services Defendants rendered while Terry was a long-term resident of their memory care facility and injuries arising from that care or lack thereof.[20]  The standard of skill, knowledge, and experience required to care for someone like Terry, a long-term resident with dementia; whether Defendants departed from that standard of care; and whether that departure caused Terry's infections, complications, and death certainly would be beyond a layperson's understanding and therefore require expert testimony.  *See Bryant*, 684 N.W.2d at 873-74 (risk assessment and monitoring of bed-ridden psychiatric patient required specialized knowledge beyond a layperson's understanding); *Montana Deaconess Hosp. v. Gratton*, 169 Mont. 185, 189, 545 P.2d 670, 672 (1976) ("[t]he cause of an infection is not readily ascertainable by a layman"); *Kipfinger*, ¶¶ 17-18, 20.

¶34     Although Athy emphasizes that certain alleged failures—such as prolonged soiling or delayed transport—might be understandable to a layperson if viewed in isolation, Montana law does not parse claims into discrete acts divorced from the overall duty alleged.  The FAC includes claims of a comprehensive failure of professional care in a memory-care setting, including medication management, monitoring of physical condition, and prevention and treatment of wounds.  The gravamen of these claims concerns whether

---

[20] Athy concedes "it is fair to say that Counts I through VI concern the nature and quality of the care Terry received."  Thus, although conceivably there could be care-related claims that fall outside the domain of medical malpractice, as pleaded here, they do not.

Defendants met the professional standard of care applicable to a long-term care facility providing health-related services, a determination that necessarily depends on medical judgment and expert testimony. Recasting selected allegations as custodial "neglect" does not alter the fundamentally medical nature of the claims as pleaded.

¶35 As in *Selensky-Foust*, ¶¶ 8-13, Athy's care-based claims (Counts I-VI) were premised upon personal and health care Terry received or failed to receive and were thus "medical in nature." Based on the alleged negligent conduct underlying Counts I-VI, the gravamen of these claims was medical malpractice, regardless of how Athy styled them. We hold that the District Court correctly construed Counts I-VI as medical malpractice claims subject to §§ 27-2-205(1) and 25-3-106, MCA.

¶36 Conversely, we cannot say that Athy's claims for unjust enrichment and contract rescission similarly arose out of personal or health-care services. Instead, the gravamen of Counts VII and VIII were claims based on Defendants' business practices. *See Selensky-Foust*, ¶¶ 9-13 ("general business decisions" not implicating medical judgment subject to ordinary, not professional, standard of care). Count VII alleged that Defendants unlawfully accepted and retained payment "for weeks of non-existent care . . . that was never rendered." Unjust enrichment is not rooted in negligence, professional or otherwise. *Missoula Cnty. v. State*, 2024 MT 98, ¶ 31, 416 Mont. 340, 547 P.3d 1268 ("unjust enrichment is an equitable claim for restitution to prevent or remedy inequitable gain by another"). Count VIII alleged that Defendants intentionally misrepresented the level of care they would provide Terry at the Edgewood facility at the time of contracting for care;

21

Athy sought only a rescission remedy. Unlike Counts I-VI, Counts VII and VIII did not include a claim for damages for personal injury or death, nor did they turn on the adequacy of medical judgment or professional care. Instead, they sought restitution and rescission based on alleged misrepresentations and retention of payments—remedies directed at financial transactions rather than physical harm.

¶37 Accordingly, we hold that FAC Counts I-VI were medical malpractice claims subject to the § 27-2-205(1) two-year statute of limitations and § 25-3-106 six-month service of process requirement. Conversely, we hold that FAC Counts VII and VIII were not medical malpractice claims and were therefore not subject to §§ 27-2-205(1) or 25-3-106, MCA. The District Court therefore erroneously dismissed Counts VII and VIII on the grounds they were time-barred by § 27-2-205(1), MCA. We limit our holding to this narrow issue and do not decide or opine on whether Counts VII or VIII can withstand Defendants' motion to dismiss. The District Court must make that determination on remand in light of this Opinion.

¶38 *2. Did the District Court correctly dismiss Athy's medical malpractice claims as time-barred by § 27-2-205(1), MCA?*

¶39 We now turn to whether the District Court correctly applied §§ 27-2-205(1) and 25-3-106, MCA, to dismiss Athy's medical malpractice claims, Counts I-VI. We hold that the court correctly dismissed these claims as time-barred.

¶40 In *Estate of Phillips*, we considered arguments nearly identical to those Athy raises here. There, like here, Phillips timely filed a complaint alleging medical malpractice. And, like here, Phillips never served the complaint. Then, over a year later, Phillips filed an

22

amended complaint that he timely served. Like here, the defendants filed a motion to dismiss the amended complaint on the grounds that Phillips never served the original complaint under § 25-3-106, MCA, and the amended complaint was therefore time-barred under § 27-2-205(1), MCA. Like Athy, Phillips argued on appeal that (1) filing the original complaint tolled the statute of limitations and (2) the amended complaint related back to the original complaint under M. R. Civ. P. 15(c) and was therefore timely. *Estate of Phillips*, ¶¶ 3-4, 8.

¶41 Regarding tolling, we held that the district court incorrectly construed § 25-3-106, MCA, to toll the § 27-2-205(1) two-year limitations period for six months. Nothing in the language of those statutes allowed for tolling of the limitations period under the circumstances at issue.[21] *Estate of Phillips*, ¶¶ 4, 8, 12. The service of process deadline does not operate to extend the statute of limitations and "a complaint must be filed within two years of when the injury accrued . . . regardless of whether service of process is made within six months." *Estate of Phillips*, ¶ 12. We also rejected Phillips' claim that filing the original complaint tolled the statute of limitations, holding that "a statute of limitations is not tolled during pendency of an action which is dismissed without prejudice." *Estate of Phillips*, ¶¶ 16-17 (citing *Harris v. Canton*, 725 F.2d 371, 376-77 (6th Cir. 1984) (the "notion of tolling is a very limited one")).

---

[21] We said the only provision with any tolling effect on § 27-2-205(1), MCA, was § 27-6-702, MCA, which "pertain[s] to the MMLP process." *Estate of Phillips*, ¶¶ 4, 9, 11, 15. Section 27-6-702, MCA, tolls the med-mal statute of limitations during the pendency of MMLPA review and for 30 days after panel decision. For reasons explained at length above, the MMLPA is inapplicable to the claims in this case.

¶42 Then, reading §§ 27-2-205(1) and 25-3-106, MCA, together, we held that:

> Montana's service of process statute for a medical malpractice action requires that the complaint be dismissed. The addition in the statute of "without prejudice" does nothing to help the plaintiff who is facing an expired limitation period. . . . [I]f [a] [p]laintiff fails to serve the complaint within six months, [the complaint] is subject to dismissal under the service of process statute. If it is dismissed, and the limitations period has expired during that six-month period, the complaint is subject to dismissal with prejudice under the limitations statute.

.   .   .

> To conclude, as Phillips urges, that a complaint must be dismissed without prejudice by operation of § 25-3-106, MCA, even though well outside the period of limitations, would render meaningless the statute of limitations—a plaintiff could wait years to serve a defendant and then refile a new action after the limitations period has expired.

*Estate of Phillips*, ¶¶ 13-15. We also explained the policy behind §§ 27-2-205(1) and 25-3-106, MCA:

> [T]aken together[, these statutes] establish a policy that the prosecution of a medical malpractice claim must be done diligently and in a timely manner. The purpose of statutes of limitations is to prevent stale claims from being brought against defendants whose ability to effectively defend themselves often worsens over time. Claims must be pursued by plaintiffs in a timely manner, or the plaintiff will lose their opportunity to pursue the claim.

*Estate of Phillips*, ¶ 10 (internal citations omitted).

¶43 Regarding relation-back, we noted that Phillips had raised that theory for the first time in a post-judgment motion to set aside the dismissal, which the district court denied upon concluding Phillips only sought to relitigate the dismissal on a new legal theory. We affirmed without deciding whether M. R. Civ. P. 15(c) relation-back saved Phillips'

amended complaint from the § 27-2-205(1), MCA, time bar. *Estate of Phillips*, ¶¶ 5, 19-22 (citing M. R. Civ. P. 59(e) and 60).

¶44 Here, it is undisputed that Athy's medical malpractice claims accrued no later than Terry's death on November 23, 2021, and that the November 20, 2023 complaint was timely filed. However, just like Phillips, Athy failed to serve the complaint within six months (or ever), subjecting it to mandatory summary dismissal without prejudice under § 25-3-106, MCA. And, just like Phillips, Athy filed a "first amended complaint" to maintain the action, arguing timeliness through relation-back. Relying on *Estate of Phillips*, Defendants filed a motion to dismiss the FAC with prejudice on the grounds that it was time-barred because Athy never perfected the original complaint with timely service of process.

¶45 Sections 27-2-205(1) and 25-3-106, MCA, effectively work in tandem to impose a two- and one-half-year deadline for prosecuting medical malpractice claims.[22] If a complaint is timely filed and served within six months of filing, the complaint is perfected and there is no issue. But, if a complaint is timely filed but not served within six months, the complaint is subject to mandatory summary dismissal without prejudice.[23] Ordinarily,

---

[22] *Estate of Phillips*, ¶ 9 (one is a statute of limitations and the other a "deadline" for service of process).

[23] In *Peterson v. Simon*, 2024 MT 185, 418 Mont. 12, 555 P.3d 253, we affirmed that § 25-3-106, MCA, mandates dismissal without prejudice where dismissal "rests solely on a failure to serve within 6 months." *Peterson*, ¶¶ 8-13 (distinguishing *Estate of Phillips* and reversing district court dismissal of original complaint with prejudice for failure to timely serve, even though the statute of limitations had since expired, because, unlike in *Estate of Phillips*, there had been no subsequent refiling to trigger the statute of limitations issue).

"without prejudice" means "a dismissal that does not bar the plaintiff from refiling the lawsuit within the applicable limitations period." *Schmitz v. Engstrom*, 2000 MT 275, ¶ 11, 302 Mont. 121, 13 P.3d 38. But, as we said in *Estate of Phillips*, the "without prejudice" provision of § 25-3-106 "does nothing to help the plaintiff who," upon refiling, "is facing an expired limitation period." Further, "the limitations period is not tolled during the pendency of an action which is dismissed without prejudice."[24] Instead, dismissal without prejudice "leaves the situation the same as if the suit had never been brought." *Estate of Phillips*, ¶¶ 13-17, 23; *accord Schimtz*, ¶ 11. Therefore, the plaintiff must file a *new* complaint to commence the action before the applicable statute of limitations expires. If he does not meet the statutory deadline for filing, the new complaint is subject to dismissal with prejudice as time-barred. *Estate of Phillips*, ¶¶ 11, 15, 23 ("[f]ailure to file a complaint within the period of limitations results in dismissal of the complaint with prejudice").

¶46 Here, Athy has found himself in the same scenario as Phillips: he timely filed a complaint but never accomplished service and, by the end of the six-month service window, the two-year statute of limitations had expired. In other words, Athy failed to timely prosecute his malpractice claims under §§ 27-2-205(1) and 25-3-106, MCA. Therefore (1) the original complaint was subject to summary dismissal without prejudice by the District Court on its own motion because not timely served and (2) the FAC, properly construed as a re-filed or *new* complaint, re-commenced the action but was subject to dismissal with prejudice because filed beyond expiration of the statute of limitations.

---

[24] *Estate of Phillips*, ¶ 12, also makes clear that the § 25-3-106 six-month service of process deadline does not affect the § 27-2-205(1) limitations period; it runs with or without service.

*Estate of Phillips*, ¶¶ 9-17.  Accordingly, we hold that the District Court correctly dismissed Athy's malpractice claims as untimely under § 27-2-205(1), MCA, and *Estate of Phillips*.

¶47    Here, Athy makes three arguments against application of *Estate of Phillips*: (1) public policy favors resolution on the merits; (2) under *Webb*, which was not addressed in *Estate of Phillips*, the statute of limitations was tolled upon filing the original complaint and remained tolled; and (3) *Estate of Phillips* leaves unanswered the question of whether relation-back principles apply to save the FAC from dismissal.  We address each argument in turn.

### A.  Public Policy Argument

¶48    As for Athy's first argument, we reject it on the same grounds that we rejected the plaintiff's identical argument in *Estate of Phillips*:

> Phillips additionally argues her claims should not have been dismissed because "the policy of the law is to favor trial on the merits." *Schmitz v. Vasquez*, 1998 MT 314, ¶ 27, 292 Mont. 164, 970 P.2d 1039.  However, certain procedural steps must be followed before a plaintiff can argue the merits of a complaint.  Statute of limitations prevent stale claims and compel the exercise of a right of action within a reasonable time.  The policy of favoring trial on the merits cannot override the important and clear policy of ensuring the timely pursuit of claims as intended by the Legislature in enacting tighter deadlines for both service of process and statute of limitations for medical malpractice claims.

*Estate of Phillips*, ¶ 21 n.1 (some internal citations and punctuation omitted); *compare* Appellant's Opening Brief ("public policy favor[s] the resolution of disputes on their merits" (citing *Schmitz*, ¶ 27)).

27

## B. *Webb*'s Applicability

¶49    As for Athy's second argument, *Webb* is factually distinguishable and does not contradict our holding in *Estate of Phillips*.  In *Webb*, we held that a malpractice complaint was timely under § 27-2-205(1), MCA, because, at all times pertinent, the claim was either before the district court or concurrently undergoing MMLPA and Chiropractic Legal Panel (CLP)[25] review, tolling the statute of repose.[26]  Just shy of five years after her injury, Webb filed an application for MMLPA pre-filing claim review.  She then filed her first complaint within 30 days of the panel's decision but never served it.  While her first complaint was pending, Webb filed an application for claim review by the CLP.  While CLP review was pending, Webb voluntarily dismissed her first complaint without prejudice.  Within 30 days of the CLP's decision, Webb filed a second complaint against the same defendants, which she timely served.  The district court granted defendants summary judgment that the second complaint was untimely.  We reversed.  *Webb*, 275 Mont. at 244-48, 912 P.2d at 203-06.

¶50    First, we held that filing a complaint commences an action and thereby tolls the applicable statutes of limitation and repose.  *Webb*, 275 Mont. at 250-51, 912 P.2d at 207-08 (citing § 27-2-102(1)(b), MCA, and M. R. Civ. P. 3).  The dispositive question then became whether Webb's voluntarily dismissal of her first complaint without prejudice

---

[25] *See supra*, note 10.

[26] *Webb* came to us on appeal from a district court grant of summary judgment to defendants "on the ground that Webb's complaint was barred by the applicable statute of repose." *Webb*, 275 Mont. at 245, 912 P.2d at 204.  Not at issue here, § 27-2-205(1), MCA, provides that "in no case may an action be commenced after 5 years from the date of injury."  We have called this a "statute of repose." *See Blackburn v. Blue Mt. Women's Clinic*, 286 Mont. 60, 73, 951 P.2d 1, 8 (1997) (citing *Webb*).

28

"nullified" the tolling of § 27-2-205(1), MCA. We acknowledged the general rule that voluntary dismissal without prejudice does not toll a limitations period.[27] However, by contrast, MMLPA and CLP claim review expressly toll § 27-2-205(1) limitations periods. *Webb*, 275 Mont. at 250-51, 912 P.2d at 207-08 (citing §§ 27-6-702 and 27-12-701, MCA). Therefore, by initiating MMLPA review, Webb tolled § 27-2-205(1), MCA. Protected from that point, Webb commenced a district court action prior to expiration of the MMLPA tolling period, initiated CLP review while that action was pending before the court, dismissed her first complaint during CLP review, and then re-commenced a second district court action before expiration of the CLP tolling period—thereby seamlessly avoiding any lapse in the initial tolling of § 27-2-205(1), MCA. Therefore, despite the general rule, voluntary dismissal of her first complaint did not "nullify" statutory tolling. *Webb*, 275 Mont. at 250-51, 912 P.2d at 207-08.

¶51 We rejected the defendants' argument in *Webb* that failure to timely serve the first complaint meant it was subject to dismissal with prejudice. Though decided on different grounds and long before enactment of § 25-3-106, MCA, the holding remains correct in light of *Estate of Phillips* and *Peterson v. Simon*, 2024 MT 185, 418 Mont. 12, 555 P.3d 253.[28] *Webb*, 275 Mont. at 249-50, 912 P.2d at 206-07. Also, our holding in *Webb* was very narrow, so narrow that we have never applied it since in almost 20 years:

> Applying the [MMLPA and MCLPA] panel tolling statutes compels the conclusion that, in a medical or chiropractic malpractice case, if a plaintiff's

[27] *Webb*, 275 Mont. at 250-51, 912 P.2d at 207-08 (citing and discussing § 27-2-407, MCA (Montana's "saving statute"), and *Tietjen v. Heberlein*, 54 Mont. 486, 488, 171 P. 928, 928 (1918)).

[28] *See supra*, note 23.

first complaint was timely filed but is voluntarily dismissed while the case is pending before a malpractice panel in proceedings which name the original defendants as necessary parties, §§ 27-2-702 and 27-12-701, MCA, provide, as to those originally named defendants, a continuous tolling "bridge" between the first complaint and the subsequently filed complaint, assuming the latter is timely filed under the Panel Acts and names the original defendants.

*Webb*, 275 Mont. at 251, 912 P.2d at 207-08. Finally, *Webb* does not contradict our holding in *Estate of Phillips* that dismissal without prejudice does not toll the statute of limitations. Our *Webb* holding simply depended on unique facts not present here—Webb continuously maintained her cause of action either before the district court or a legal panel, thereby keeping § 27-2-205(1), MCA, tolled for all times pertinent. As described above, Athy's procedural circumstances are distinct. Instead, *Estate of Phillips* is nearly identical to Athy's case and compels the same result.

### C. Relation-Back Theory

¶52 Finally, as for Athy's third argument that relation-back saves his malpractice claims from dismissal, we disagree. Unlike in *Estate of Phillips*, the issue is now squarely before us, and we affirm the District Court.

¶53 Athy's M. R. Civ. P. 15(c) relation-back arguments implicate numerous legal principles regarding notice of litigation and service of process. Rule 15(c) is grounded in notice, permitting pleading amendments to "relate[] back to the date of the original pleading" only in specific, enumerated circumstances.[29] *Prentice Lumber Co. v. Hukill*,

---

[29] A defendant on-notice of the claims against it may reasonably expect new, different, or tangential claims to arise "out of the conduct, transaction, or occurrence set out . . . in the original pleading." M. R. Civ. P. 15(c)(1)(B). Likewise, a defendant implicated by "the conduct, transaction, or occurrence set out . . . in the original pleading" who would have been properly

161 Mont. 8, 14-16, 504 P.2d 277, 280-81 (1972); *La Forest*, 179 Mont. at 46-47, 585 P.2d at 1319-21. Rule 15(c) relation-back "is based on the concept that a party who is *notified of litigation* concerning a given transaction or occurrence has been given all the notice that statutes of limitation are intended to afford." *Rozan v. Rosen*, 150 Mont. 121, 124-25, 431 P.2d 870, 872 (1967) (citation omitted, emphasis added).[30] To permit relation-back without fair notice of the proceedings would defeat the very purpose of the Rule. *See Rierson v. State*, 188 Mont. 522, 525-28, 614 P.2d 1020, 1022-24 (1980) (citing *Rozan*, 150 Mont. at 124-25, 431 P.2d at 871).

¶54 In fact, "the concept of notice is critical to operation of the relation back rule." *Rierson*, 188 Mont. at 528, 614 P.2d at 1024. In *Rierson*, we held that the relation-back doctrine "will not operate" upon an original pleading that was never served. Rierson filed a timely petition for judicial review of an agency decision but never served it. Then, over

---

named in the complaint "but for a mistake concerning [its] identity," may be later added by amendment, but only if the defendant "received such notice of the action" and "knew or should have known that the action would have been brought against it." M. R. Civ. P. 15(c)(1)(C).

[30] *Accord Prentice Lumber*, 161 Mont. at 14-16, 504 P.2d at 280-81 ("if the original pleading gives *fair notice* of the general fact situation out of which the claim or defense arises, an amendment which merely makes more specific what has already been alleged . . . or remedies a defective pleading, will relate back even though the statute of limitations has run in the interim" (citation omitted)); *La Forest*, 179 Mont. at 45-47, 585 P.2d at 1320-21 (Rule 15(c)(1)(C), Montana's "misnomer rule," contemplates "situations in which the plaintiff has actually *sued and served* the correct party, the party he intends to sue, but merely mistakenly used the wrong name of the defendant"—"where the newly named defendant *received notice of the action* and knew or should have known that he was the intended defendant, . . . there would be no prejudice to the person or entity by allowing the amendment" (citing, among others, the Advisory Committee notes to Rule 15(c) (emphasis added))); *Keller v. Stembridge Gun Rentals*, 221 Mont. 352, 354-55, 719 P.2d 764, 765-66 (1986) (the "misnomer rule," as distinct from the fictitious defendant rule, § 25-5-103, MCA, is inapplicable when the plaintiff identifies the wrong defendant from the outset because Rule 15(c) does not permit "the addition or substitution of parties who had *no notice of the original act*" (citing *La Forest*) (emphasis added)).

a year later, he filed and served an amended petition, which the trial court dismissed on defendants' motion for failure to serve the original petition, failure to prosecute, and lack of jurisdiction (§ 2-4-702(2)(a), MCA, requires "prompt" service). We affirmed, rejecting Rierson's claim that the amended petition related back under M. R. Civ. P. 15(c). Rather, because the defendants "were never served with the original petition," they "were not given fair notice by the original petition." Dismissal was appropriate "since the relation back doctrine [would] not operate" under those circumstances. *Rierson*, 188 Mont. at 525-28, 614 P.2d at 1022-24.

¶55    In *La Forest*, we applied the same construction of Rule 15(c)(1)(C) to preclude relation-back of an amended complaint filed after expiration of the statute of limitations that named Texaco as a defendant for the first time. Although the body of the original complaint implicated Texaco as the proper defendant, the caption did not name it as a party. Despite subsequent revision and service, we held that relation-back was not permitted under Rule 15(c) because Texaco was *never served* with the original complaint and therefore lacked requisite notice of the lawsuit. *La Forest*, 179 Mont. at 44-47, 585 P.2d at 1319-20.

¶56    While *Rierson* and *La Forest* independently foreclose relation-back where the original pleading was never served and thus provided no notice, *Estate of Phillips* confirms that conclusion in the specific context of medical malpractice actions subject to § 25-3-106, MCA, service of process requirements. Montana precedent consistently treats timely notice to the defendant—not the mere filing of a pleading—as the touchstone of

32

relation-back. *Accord La Forest*, 179 Mont. at 47, 585 P.2d at 1321 (notice of the existence of a claim is not notice of a lawsuit); *Nolan*, ¶ 12; *Fonk*, 260 Mont. at 383-84, 860 P.2d at 147 (notice of a lawsuit is accomplished only through "valid service").[31] Where, as here, the original complaint was never served, Defendants had no notice of Athy's lawsuit within the limitations period.

¶57 We conclude that Athy's malpractice claims[32] could not relate back to the original complaint because the original complaint was never served under § 25-3-106, MCA, and was therefore subject to summary dismissal without prejudice under *Estate of Phillips*. As such, dismissal without prejudice left the matter "the same as if the suit had never been brought." Accordingly, there was no "original pleading" to which the FAC could relate back. The FAC was thus a *new* complaint, not an amended one, and was time-barred by § 27-2-205(1), MCA.

¶58 We hold that M. R. Civ. P. 15(c) relation-back could not operate to save Athy's malpractice claims from dismissal under these circumstances.

## CONCLUSION

¶59 We hold that the District Court correctly construed Counts I-VI of Athy's FAC as medical malpractice claims subject to §§ 27-2-205(1) and 25-3-106, MCA, time limits and

---

[31] Athy's argument that Defendants "should have known that [he] would be pursuing relief" does not meet this standard.

[32] Because we hold that the District Court incorrectly dismissed Athy's business-practices claims—unjust enrichment and contract rescission Counts VII and VIII—as malpractice claims time-barred by § 27-2-205(1), MCA, we do not reach Athy's relation-back arguments regarding these claims.

33

service of process requirements and that the court correctly dismissed those counts under *Estate of Phillips* as time-barred by the two-year statute of limitations for malpractice claims. However, we hold that Athy's unjust enrichment and contract rescission claims were not medical malpractice claims and not subject to §§ 27-2-205(1) or 25-3-106, MCA. Therefore, the District Court incorrectly dismissed Counts VII and VIII as untimely under those statutes. Accordingly, we affirm in part, reverse in part, and remand for further proceedings on Defendants' motion to dismiss Athy's unjust enrichment and contract rescission claims.

/S/ KATHERINE M. BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ JAMES JEREMIAH SHEA
/S/ INGRID GUSTAFSON
/S/ JIM RICE